SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Elizabeth J. Lee (SBN 316119)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
elizabeth@spertuslaw.com

*Attorneys for William and Ila Nelson*



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF $278,028.88 IN U.S. CURRENCY; $100,828.75 IN ACCOUNT FUNDS FROM BANK OF AMERICA ACCOUNT NO. '3623; AND $370,894.69 IN ACCOUNT FUND FROM BANK OF AMERICA ACCOUNT NO. '2093. | CR MISC. NO. 18-00351-SJO<br>*[Assigned to Hon. S. James Otero]*<br>**OPPOSITION TO EX PARTE APPLICATION TO EXTEND THE CIVIL FORFEITURE COMPLAINT DEADLINE AND REQUEST FOR IMMEDIATE RELEASE OF SEIZED ASSETS PURSUANT TO 18 U.S.C. § 983(f)**<br>*[Filed concurrently with Declaration of Elizabeth Lee; and Proposed Order]* |

Claimants hereby submit their Opposition to the government's Ex Parte Application to Extend the Civil Forfeiture Complaint Filing Deadline (the "Ex Parte Application") and respectfully request that the Court deny the government's request for an extension of time to file the forfeiture complaint and, instead, order the immediate release of the seized assets in exchange for a lien on Pacific College's real property pursuant to 18 U.S.C. § 983(f)(1)-(7).

## I. INTRODUCTION

If ever there was a compelling case for CAFRA's hardship exception, this is that case. The government's seizure of Claimants William and Ila Nelson, and Donna and William Woo (collectively, "Claimants"), assets violates due process and, furthermore, is subject to the hardship exception which *requires* immediate release of the seized assets under Civil Asset Forfeiture Reform Act ("CAFRA") 18 U.S.C. §983(f). Without return of the seized funds: (1) Pacific College, a respected nursing school that has provided career opportunities to an underserved community for 35 years, will close; (2) school employees will lose their jobs; and (3) Ms. Woo, who was diagnosed with breast cancer, will be unable to afford treatment since her personal savings have been keeping the school afloat since the seizure. Declaration of Pacific College Vice President Donna Woo ("Woo Decl."), at ¶¶ 12, 15.

*First*, Claimants respectfully request that the Court deny the government's Ex Parte Application because the government cannot establish good cause for its requested extension, and the ex parte forfeiture of Claimants' personal property violates Due Process under *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993). *Second*, Claimants request the immediate release of their seized assets pursuant to 18 U.S.C. §983(f), because there is more than sufficient equity in Pacific College's campus building at 3160 Red Hill Avenue, Costa Mesa, California 92626 (the "College Building") to secure whatever forfeiture claims the government may want to pursue. This Court has the authority to order the immediate release of the seized assets in exchange for a $749,752.32 lien on the College Building. 18 U.S.C. §983(f)(7). There is at least $749,752.32 of equity in the College Building. This solution would prevent Pacific College's imminent failure and protect the government's forfeiture interest. A proposed order has been filed concurrently with this Opposition.

## II. BACKGROUND

Unless the seized funds are immediately released, Pacific College will fail and close its doors to hundreds of future nurses serving the surrounding communities. On October 10, 2017, the government executed seizure warrants on bank accounts and a search warrant at Pacific College, and seized the currency that is the subject of this proceeding, totaling $749,752.32, which excludes Pacific College's operating account, and the personal accounts of Ms. Woo's daughter, Jennifer Woo (CR Misc. No. 18-00361-SJO), and Marcus Tromp (CR Misc. No. 18-00360-SJO), a Pacific College employee. Declaration of Elizabeth J. Lee, ("Lee Decl.") at ¶ 2. These seizures left Pacific College without any means to pay its monthly overhead of approximately $400,000. *Id.* at ¶ 3.

Shortly after the seizure, the DOE placed Pacific College on Heightened Cash Monitoring 2 ("HCM 2") status. *Id.* at ¶ 4. HCM 2 status means that the College is no longer eligible to receive funds under the DOE's advance payment method. *Id.* at ¶5. Instead, the College must first make disbursements to students, then submit reimbursement requests to the DOE, which can take months. *Id.* The DOE has confirmed that the only reason the DOE placed the College on HCM 2 status was because the FBI executed search warrants, and there is no other reason for the HCM 2 status. *Id.*

Since October 2017, Pacific College has barely survived, eking by each month on contributions from Mr. Nelson and Ms. Woo, who have drawn down and closed their personal savings accounts in an effort to save the school that they built from the ground thirty five years ago. *Id.* at ¶ 6. But Mr. Nelson and Ms. Woo are past retirement age and cannot afford to keep the College afloat any longer. *Id.*; Woo Decl. at ¶¶ 4, 10. Ms. Woo is battling breast cancer and Mr. Woo is fighting Hepatitis B, they both lack health insurance, and are running out of funds to pay for their medical care. Woo Decl. at ¶ 12. Without return of the seized funds, the school that has provided nursing education for underserved communities for thirty

five years will close, school employees will be unemployed, and students will be unable to pursue their nursing careers. Woo Decl. at ¶ 15.

In search of a resolution that would preserve the government's seizure interest and permit Pacific College to continue operations, Claimants' counsel reached out to the government to offer their full cooperation in late December 2017. *Id.* at ¶ 7. On January 16, 2018, Claimants' counsel provided a detailed factual summary to the government addressing each category of the government's investigation and offering to provide any additional information requested. *Id.* at ¶ 8. On January 19, 2018, Claimants' counsel attended a meeting with representatives from the government, including AUSA Daniel Ahn, Forfeiture AUSA Frank Kortum by telephone, the investigating FBI agents, and DOE representatives, and Claimants' Counsel presented a PowerPoint to the government and answered the government's questions. *Id.* at ¶ 9.

At the January 19, 2018 meeting, Claimants' counsel identified the seized funds as belonging to Claimants, indicated that Claimants have sufficient ties to the community to provide assurance that the property would remain available for trial, and explained that Pacific College would fail without such a compromise and that Claimants' hardship outweighs any risk that the property would be destroyed. *Id.* at ¶ 10. Claimants further explained that the seized funds were not proceeds of any crime, nor would they be used to facilitate any crime. *Id.*

On January 28, 2018, at the government's request, Claimants' counsel provided the government with additional information about Pacific College's, Mr. Nelson's, and Ms. Woo's remaining bank balances. *Id.* at ¶ 11, Ex. 6. Soon thereafter, counsel for Pacific College, Terree Bowers, offered the government a lien on the College Building in exchange for the release of the seized funds, which would enable the College to operate pending the investigation. *Id.* at ¶ 12, Ex. 10. Shortly thereafter the government rejected the offer. *Id.* at ¶ 13.

As a result of the investigation, Claimants cannot obtain personal loans to fund the College. *Id.* at ¶14. On February 3, 2017, Ms. Woo was informed that Bank of America would be closing all of her accounts. *Id.* Ms. Woo had a thirty-year relationship with Bank of America and her accounts have been closed as a result of the investigation. *Id.*

In yet another bid to enable the College to continue operations pending the investigation, Claimants' counsel submitted a letter to the government on February 7, 2018, specifying how the College has funded operations since October 2017. *Id.* at ¶ 15, Ex. 8. These measures have included slashing employee salaries and making the above-mentioned contributions from personal savings. *Id.* Claimants' counsel also assured the government that Claimants would provide complete transparency and a full accounting upon request if the government agreed to release the seized funds. *Id.* at ¶ 16, Ex. 12. Four days later, the government informed Claimants' counsel that the government would decline the offer to exchange a lien on the College Building for the return of the seized funds. *Id.* at 17, Ex. 13.

## III.  DISCUSSION

The government cannot demonstrate good cause to delay filing its complaint, and its ex parte seizure of Claimants' property violates Due Process under *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993) and *Matthews v. Eldridge*, 424 U.S. 319 (1976). Furthermore, Claimants qualify for the hardship exception to CAFRA, which requires the immediate release of the seized funds. The Court has authority pursuant to §983(f)(7) to order the immediate release of the seized funds in exchange for a lien on the College Building.

### A.  The Government Cannot Establish Good Cause for Its Delay

The Ninth Circuit has not defined "good cause" in the CAFRA context. The government points to Rule 16(b)'s good cause jurisprudence (*see* Ex Parte Application at 7), but even if Rule 16(b) jurisprudence did apply here (which it does not) a proper good cause inquiry under Rule 16(b) "provides the district courts

5.

discretion to ensure that . . . [modification of deadlines] do[es] not result in prejudice or hardship to either side." *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013).

Here, there is no doubt that the requested extension will prejudice Claimants. Without its operating account, the ability to obtain a loan, or relief from HCM 2 status – <u>all of which are the direct result of the government's investigation only</u> – Pacific College will fail before the requested June 4, 2018 deadline arrives. Furthermore, the Woos will be unable to pay their necessary medical expenses or make their mortgage or car payments. Woo Decl. at ¶ 15. This result empowers the government, without judicial oversight, to destroy legitimate businesses and take away citizens' livelihoods without Due Process.

Furthermore, contrary to the government's assertions, the government has failed to establish its diligence in pursuing this investigation. The seizure occurred at the beginning of October 2017. The government has had over five months to prepare its complaint, but has failed to do so. The government then waited <u>until the last day possible</u> to file its Ex Parte Application for additional time.

The government's assertion that a complaint will "prematurely disclose the scope and direction of the government's pending criminal investigation" is meritless. (Ex Parte Application at 6.) Claimants and the government have already engaged in significant discussions about this case. *See* Lee Decl., at ¶¶ 9-13. Importantly, the government's current theory closely parallels an ongoing civil matter entitled *Castillo et al. v. Pacific College et al.*, OSC Case No. 30-2017,00940796-CU-WT-CJC. And, indeed, Claimants have produced a presentation and letter to the government addressing those areas of concern. *See* Lee Decl., at ¶ 8. Revealing the "scope and direction" of the investigation is not a justifiable reason for delay, and, in fact, the Ex Parte Application itself contains those revelations. *Id.*

### B. The Seizure Violates Due Process

It is well-established that where "the Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself . . . [the] government action of this consequence must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments." *James Daniel*, 510 U.S. at 52. The Constitution only affords "exceptions to the general rule requiring predeprivation notice and hearing" in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 53.

In making this determination, the Supreme Court looks to the three-part inquiry set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *James Daniel*, 510 U.S. at 53. The *Mathews* analysis requires consideration of (1) "the private interest affected by the official action;" (2) "the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards;" and (3) "the Government's interest, including the administrative burden that additional procedural requirements would impose." *Id.* (citing *Matthews*, 424 U.S. at 335).

The *Mathews* factors favor Claimants. ***First***, the seizure of a means of income "cannot be classified as *de minimis* for purposes of procedural due process." *Id.* at 54. Claimants have a strong private interest in access to their retirement and other bank accounts and in their ability to support themselves, pay their mortgages, and fund their medical treatments. ***Second***, as to "the risk of an erroneous deprivation" and "the probable value of additional safeguards," the Supreme Court has observed that where

> a claimant may not receive an adversary hearing until many months after the seizure . . . even if the ultimate judicial decision is . . . that the Government lacked probable cause, this determination, coming months after the seizure, would not cure the temporary deprivation that an earlier hearing might have prevented.

*Id.* at 56. Claimants maintain their innocence and have offered cooperation with the government to resolve this case. *See* Lee Decl. at ¶ 7. But, Pacific College will fail if the government persists in withholding the seized funds without Due Process. Moreover, the Woos will be unable to afford their mortgage or healthcare while Ms. Wood battles breast cancer and Mr. Woo fights Hepatitis B. Woo Decl. at ¶ 12. The risk of erroneous deprivation is high and additional safeguards are readily available in the form of a lien on real property that is not going anywhere. **Third**, "the Government's interest," refers to its "specific interest in seizing real property before the forfeiture hearing" to avoid the property's loss or destruction. *Id.* But "real property cannot abscond," and Claimants offer real property to replace the liquid funds that would keep Pacific College afloat pending the investigation. *Id.*

### C. Claimants Are Entitled To Immediate Release Of Their Property Under 18 U.S.C. § 983(f)

Separately, Claimants request the immediate release of their seized assets under CAFRA's hardship provision. 18 U.S.C. § 983(f); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 101, n.11 (D.D.C. 2012). First, Claimants have taken appropriate steps to request return of the funds and provided the required details set forth in §983(f)(1) to the appropriate officials. *See* Lee Decl. at ¶ 10. Second, more than fifteen days have passed since that request was made. *Id.*

This Court now has authority to consider Claimants' hardship request and order the immediate release of the seized funds in exchange for a lien on the College Building. 18 U.S.C. §983(f)(7) ("[T]he court may enter any order necessary to ensure that the value of the property is maintained while the forfeiture action is pending.").

Section 983(f) provides that "[a] claimant . . . is entitled to immediate release" of seized property where

> (A) the claimant has a possessory interest in the property; (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial; (C) the continued possession by the Government pending the final disposition of forfeiture

8.

proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1). Claimants satisfy every element of CAFRA's hardship provision. *First*, there is no dispute that Claimants have possessory interests in the seized property. The funds were seized from personal and business bank accounts. *Second*, Claimants are intimately connected with the community. Mr. Nelson and Ms. Woo have operated Pacific College for thirty five years and the College owns a building in the community. *Third*, without return of the seized funds, Pacific College will fail, thereby "preventing the functioning of a business" and "preventing individual[s] from working." 18 U.S.C. § 983(f)(1). Mr. and Ms. Woo are also at risk of being unable to make their monthly mortgage and car payments as they relied on the seized funds to live. Woo Decl. at ¶ 10. *Fourth*, there is no risk to the government. Claimants have offered a lien on the College Building of equal value to the seized funds.

The government argues that CAFRA's hardship provision does not apply because the government seized currency and Pacific College itself was not seized. (Ex Parte Application at 9). The government relies on §983(f)(8)(A) which provides that relief is not available if the asset "is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized[.]" 18 U.S.C. § 983(f)(8)(A).

The government's argument fails for three reasons: *First*, Pacific College is a legitimate business. *Nexus Holdings, Inc. v. Dafcan Finance, Inc.*, 531 F. Supp. 2d 839, 845 (S. D. Ohio 2008) (granting return of property and finding that "[t]here appears to be no argument that Nexus is not a legitimate business or that the currency or stock are not assets of a legitimate business."). While the government is

investigating potential violations that it claims began "in approximately 2012," (Ex Parte Application at 4) Pacific College has been a legitimate nursing school <u>for thirty five years</u>. Woo Decl. at ¶ 15. No one has argued that Pacific College is an illegitimate enterprise that must be closed. ***Second***, the government's interpretation of § 983(f) ignores the fact that the "subsection also provides that currency or monetary instruments constituting the assets of a legitimate business may be returned under Section (f)(1)." *Nexus Holdings, Inc.*, 531 F. Supp. 2d at 845 ("The Court rejects the notion that it may not apply [§983(f)(1)] factors because Section (f)(8) makes the prior section inapplicable if the property is currency or monetary instruments."). ***Third***, even if the government's interpretation of §983(f) were correct (which it is not), its seizure is starving Pacific College out of existence which is tantamount to a seizure of the College itself.

The Court is empowered to order the immediate release of the seized assets in exchange for a lien on the College Building. 18 U.S.C. §983(f)(7). This outcome would resolve the Due Process violations, satisfy CAFRA's protections, and permit Pacific College to continue operations while simultaneously protecting the government's interest in the forfeiture.

## IV. CONCLUSION

Based on the foregoing, Claimants respectfully request that the Court deny the government's request for an extension of time to file the forfeiture complaint and, instead, order the immediate release of the seized assets in exchange for a lien on Pacific College's real property pursuant to 18 U.S.C. § 983(f)(1)-(7).

Dated: March 9, 2018     SPERTUS, LANDES & UMHOFER, LLP

By: /s/ Elizabeth J. Lee
James W. Spertus
Elizabeth J. Lee
Attorneys for Claimants

10.

# CERTIFICATE OF SERVICE

I Elizabeth J. Lee, declare:

That I am a citizen of the United States of America and a resident of or employee in Los Angeles County, California; that my business address is 1990 South Bundy Drive, Suite 705, Los Angeles, California 90025; that I am over the age of 18; and that I am not a party to the above-titled action. I am employed by the law firm of Spertus, Landes & Umhofer, LLP and I am a member of the California Bar and the Bar of the United States District Court for the Central District of California. On March 12, 2018, I deposited an envelope, bearing the required postage, in the United States mail, a copy of:

**Opposition To Ex Parte Application To Extend The Civil Forfeiture Complaint Deadline And Request For Immediate Release Of Seized Assets Pursuant To 18 U.S.C. § 983(f)**

and that service was made by:

[ X ] (U.S. Mail) Placed in a sealed envelope for collection and mailing via USPS, addressed as follows:

[ X ] (ELECTRONIC MAIL): Sent by email as follows:

| | |
|---|---|
| TOM BROWN<br>Managing Partner<br>Brown White & Osborn LLP<br>300 E State St #300<br>Redlands, CA 92373<br>tbrown@brownwhitelaw.com<br>Counsel for Marcus Tromp | ELIOT KRIEGER<br>Partner<br>Schuchert, Krieger, Truong, Spagnola & Klausner, LLP<br>444 W Ocean Blvd #1700<br>Long Beach, CA 90802<br>EKrieger@SKTlawyers.com<br>Counsel for Donna Woo and William Woo |

1.

*CERTIFICATE OF SERVICE*

| | |
|---|---|
| TEREE BOWERS<br>Partner<br>Arent Fox LLP<br>555 West fifth Street, 48th Floor<br>Los Angeles, CA 90013<br>terree.bowers@arentfox.com<br>Counsel for Pacific College | NICOLA T. HANNA,<br>United States Attorney<br>LAWRENCE S. MIDDLETON,<br>Assistant United States Attorney<br>Chief, Criminal Division<br>STEVEN R. WELK,<br>Assistant United States Attorney<br>Chief, Asset Forfeiture Section<br>FRANK D. KORTUM<br>Assistant United States Attorney<br>1400 United States Courthouse<br>312 North Spring Street<br>Los Angeles, California 90012<br>Frank.Kortum@usdoj.gov |
| DANIEL H. AHN<br>Assistant United States Attorney<br>United States Attorney's Office<br>411 West 4th Street, No. 8142<br>Santa Ana, California 92701<br>Daniel.ahn@usdoj.gov | |

This Certificate is executed on March 12, 2018, at Los Angeles, California. I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Elizabeth J. Lee*
Elizabeth J. Lee