

1  SPERTUS, LANDES & UMHOFER, LLP
2  James W. Spertus (SBN 159825)
   Elizabeth J. Lee (SBN 316119)
3  1990 South Bundy Dr., Suite 705
   Los Angeles, California 90025
   Telephone: (310) 826-4700
4  Facsimile: (310) 826-4711
   jim@spertuslaw.com
5  elizabeth@spertuslaw.com

6  *Attorneys for William and Ila Nelson*

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11

12  IN THE MATTER OF THE SEIZURE          CR MISC. NO. 18-00351-SJO
    OF $278,028.88 IN U.S. CURRENCY;
13  $100,828.75 IN ACCOUNT FUNDS          *[Assigned to Hon. S. James Otero]*
    FROM BANK OF AMERICA
14  ACCOUNT NO. '3623; AND                **EX PARTE APPLICATION FOR
    $370,894.69 IN ACCOUNT FUND           RELEASE OF SEIZED ASSETS
15  FROM BANK OF AMERICA                  PURSUANT TO 18 U.S.C. § 983(f);
    ACCOUNT NO. '2093.                    MEMORANDUM OF POINTS
16                                        AND AUTHORITIES IN SUPPORT
                                          THEREOF**
17
                                          *[Filed concurrently with Declaration of
18                                        Elizabeth Lee, Declaration of Donna
                                          Woo, and Proposed Order]*
19

20

21  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

22       PLEASE TAKE NOTICE that Claimants William and Ila Nelson, and

23  Donna and William Woo (collectively, "Claimants"), respectfully request that the

24  Court order the immediate release of the assets that are the subject of this

25  forfeiture in exchange for a lien of equal value on Pacific College's campus

26  building at 3160 Red Hill Avenue, Costa Mesa, California 92626 (the "College

27                                    i.

28  ─────────────────────────────────────────────
         *EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

*Spertus, Landes & Umhofer, LLP*
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Building") pursuant to this Court's authority under the Civil Asset Forfeiture Reform Act's ("CAFRA") hardship provision, 18 U.S.C. §983(f), which requires immediate release of seized assets when a claimant meets the requirements.

Good cause supports this ex parte application because Claimants and the community will suffer irreparable prejudice without ex parte relief. Without the immediate release of the seized assets: (1) Pacific College, a respected nursing school that has provided career opportunities to an underserved community for 25 years, will close; (2) school employees will lose their jobs; and (3) Vice President of Pacific College, Donna Woo, who was diagnosed with breast cancer, will be unable to afford her cancer treatments because she has been using her personal savings to keep the school afloat since the seizure. *See* Decl. of Donna Woo ("Woo Decl."), attached hereto as Exhibit B. By contrast, the proposed lien results in no risk to the government because it ensures that the government's forfeiture interest is protected.

The need for this ex parte was not caused by any fault of Claimants. Decl. of Elizabeth Lee ("Lee Decl.") at ¶ 4. On March 6, 2018 the government filed its Ex Parte Application to Extend the Civil Forfeiture Complaint Filing Deadline (the "Government's Ex Parte Application"). *Id.* In the Government's Ex Parte Application, the government indicated that "Claimants' counsel advised of their intent to oppose the application in writing within the seven-day period provided by this Court's Local Rules." *Id.* (emphasis added). On Friday, March 9, 2018, Claimants received the miscellaneous number associated with this matter and diligently filed their Opposition and Request for Immediate Release of Seized Assets Pursuant to 18 U.S.C. § 983(f) on the following business day, Monday, March 12, 2018. *Id.* at ¶ 5. Also on March 12, however, Claimants' counsel received the Court's March 8, 2018 order granting the government's request,

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

before it had ever received Claimants Opposition. *Id.*  Because Claimants were not afforded the opportunity to respond to the government's ex parte and because of the urgent nature of the impending harm to Claimants and the community, consideration of Claimant's hardship request on an expedited basis is proper.

On Monday, March 12, 2018 at 4:50 p.m., Claimants' counsel e-mailed Assistant United States Attorney Frank Kortum and provided notice of Claimants' intent to file this Ex Parte Application, explaining when and where the application will be made and the nature of the relief sought. *Id.* at ¶ 2.  The parties then conferred telephonically. *Id.*  The government opposes the relief requested in this Ex Parte Application. *Id.*  Claimants respectfully request argument at the Court's earliest convenience. *Id.*  The contact information for the government is as follows:

> Frank D. Kortum
> Assistant United States Attorney
> Asset Forfeiture Section
> 1400 United States Courthouse
> 312 North Spring Street,
> Los Angeles, California 90012
> Telephone (213) 894-5710
> E-mail: Frank.Kortum@usdoj.gov

This Ex Parte Application is based on the accompanying Memorandum of Points and Authorities, and the Declaration of Elizabeth J. Lee, attached as Exhibit A, the Declaration of Donna Woo, attached as Exhibit B, the Joinder of Donna and William Woo and on such further evidence and argument as the Court may consider in the event a hearing is held on this Ex Parte Application.

Dated:  March 13, 2018        SPERTUS, LANDES & UMHOFER, LLP

By: _____
        James W. Spertus
        Elizabeth J. Lee
        Attorneys for Claimants

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

iii.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

If ever there was a compelling case for CAFRA's hardship exception, this is that case.  Without return of the seized funds: (1) Pacific College, a respected nursing school that has provided career opportunities to an underserved community for 25 years, will close; (2) school employees will lose their jobs; and (3) Ms. Woo, who was diagnosed with breast cancer, will be unable to afford treatment since her personal savings have been keeping the school afloat since the seizure.  Woo at ¶¶ 11, 15.

Claimants request the immediate release of their seized assets. *First*, the government's ex parte forfeiture of Claimants' personal property violates Due Process under United States Supreme Court precedent.  *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993).  *Second*, immediate release of the seized assets is <u>required</u> pursuant to CAFRA's hardship exception, 18 U.S.C. §983(f), because there is more than sufficient equity in Pacific College's campus building at 3160 Red Hill Avenue, Costa Mesa, California 92626 (the "College Building") to secure whatever forfeiture claims the government may want to pursue.  This Court has the authority to order the immediate release of the seized assets in exchange for a $749,752.32 lien on the College Building.  18 U.S.C. §983(f)(7).  There is at least $749,752.32 of equity in the College Building.  This solution would prevent Pacific College's imminent failure and protect the government's forfeiture interest.  A proposed order has been filed concurrently with this Ex Parte Application.

## II.   BACKGROUND

Unless the seized funds are immediately released, Pacific College will fail and close its doors to hundreds of future nurses serving the surrounding communities.  On October 10, 2017, the government executed seizure warrants on bank accounts and a search warrant at Pacific College, and seized the

1.

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Civil
Assets
Forfeiture
Reform
Act.

*College's operating Account not seized*

1    currency that is the subject of this proceeding, totaling $749,752.32, which
2    excludes Pacific College's operating account, and the personal accounts of Ms.
3    Woo's daughter, Jennifer Woo (CR Misc. No. 18-00361-SJO), and Marcus
4    Tromp (CR Misc. No. 18-00360-SJO), a Pacific College employee.  Declaration
5    of Elizabeth J. Lee, ("Lee Decl.") at ¶ 7.  These seizures left Pacific College
6    without any means to pay its monthly overhead of approximately $400,000.  *Id.*
7    at ¶ 8.
8          Shortly after the seizure, the DOE placed Pacific College on Heightened
9    Cash Monitoring 2 ("HCM 2") status.  *Id.* at ¶ 9.  HCM 2 status means that the
10   College is no longer eligible to receive funds under the DOE's advance payment
11   method.  *Id.* at ¶ 10.  Instead, the College must first make disbursements to
12   students, then submit reimbursement requests to the DOE, which can take
13   months.  *Id.*  The DOE has confirmed that the only reason the DOE placed the
14   College on HCM 2 status was because the FBI executed search warrants, and
15   there is no other reason for the HCM 2 status.  *Id.*
16         Since October 2017, Pacific College has barely survived, eking by each
17   month on contributions from Mr. Nelson and Ms. Woo, who have drawn down
18   and closed their personal savings accounts in an effort to save the school that
19   they built from the ground twenty five years ago.  *Id.* at ¶ 11.  But Mr. Nelson
20   and Ms. Woo are past retirement age and cannot afford to keep the College afloat
21   any longer.  *Id.*, Woo Decl. at ¶¶ 4, 10.  Ms. Woo is also battling breast cancer
22   and Mr. Woo is fighting Hepatitis B, they both lack health insurance, and are
23   running out of funds to pay for their medical care.  Woo Decl. at ¶ 11.  Without
24   return of the seized funds, the school that has provided nursing education for
25   underserved communities for twenty five years will close and school employees
26   will be unemployed.  Woo Decl. at ¶ 14.
27
28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

2.

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

In search of a resolution that would preserve the government's seizure interest and permit Pacific College to continue operations, Claimants' counsel reached out to the government to offer their full cooperation in mid-December 2017. *Id.* at ¶ 12.  On January 16, 2018, Claimants' counsel provided a detailed factual summary to the government addressing each category of the government's investigation and offering to provide any additional information requested. *Id.* at ¶ 13.  On January 19, 2018, Claimants' counsel attended a meeting with representatives from the government, including AUSA Daniel Ahn, Forfeiture AUSA Frank Kortum by telephone, the investigating FBI agents, and DOE representatives, and Claimants' Counsel presented a PowerPoint to the government and answered the government's questions. *Id.* at ¶ 14.

At the January 19, 2018 meeting, Claimants' counsel identified the seized funds as belonging to Claimants, indicated that Claimants have sufficient ties to the community to provide assurance that the property would remain available for trial, and explained that Pacific College would fail without such a compromise and that Claimants' hardship outweighs any risk that the property would be destroyed. *Id.* at ¶ 15.  Claimants further explained that the seized funds were not proceeds of any crime, nor would they be used to facilitate any crime. *Id.* Claimants' counsel have assured the government that Claimants would provide complete transparency and a full accounting upon request if the government agreed to release the seized funds. *Id.* at ¶ 21, Ex. 12.

On January 28, 2018, at the government's request, Claimants' counsel provided the government with additional information about Pacific College's, Mr. Nelson's, and Ms. Woo's remaining bank balances. *Id.* at ¶ 16, Ex. 6.  Soon thereafter, counsel for Pacific College, Terree Bowers, offered the government a lien on the College Building in exchange for the release of the seized funds,

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700, Facsimile 310-826-4711

3.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700, FACSIMILE 310-826-4711

1   which would enable the College to operate pending the investigation. *Id.* at ¶ 17,

2   Ex. 10. Shortly thereafter the government rejected the offer. *Id.* at ¶ 18.

3       As a result of the investigation, Claimants cannot obtain personal loans to

4   fund the College. *Id.* at ¶ 19; Woo Decl. at ¶ 12. On February 3, 2017, Ms. Woo

5   was informed that Bank of America would be closing all of her accounts. Lee

6   Decl. at ¶ 19. Ms. Woo had a thirty-year relationship with Bank of America and

7   her accounts have been closed as a result of the investigation. *Id.*

8       In yet another bid to enable the College to continue operations pending the

9   investigation, Claimants' counsel submitted a letter to the government on

10  February 7, 2018, specifying how the College has funded operations since

11  October 2017. *Id.* at ¶ 20, Ex. 8. These measures have included slashing

12  employee salaries and making the above-mentioned contributions from personal

13  savings. *Id.* at ¶ 20. Four days later, the government informed Claimants'

14  counsel that the government would decline the offer to exchange a lien on the

15  College Building for the return of the seized funds. *Id.* at ¶ 22, Ex. 13.

16       On March 6, 2018 the government filed its Ex Parte Application to Extend

17  the Civil Forfeiture Complaint Filing Deadline (the "Government's Ex Parte

18  Application"). Lee Decl. at ¶ 4. In the Government's Ex Parte Application, the

19  government indicated that "Claimants' counsel advised of their intent to oppose the

20  application in writing within the seven-day period provided by this Court's Local

21  Rules." Lee Decl. at ¶ 4 (emphasis added). On Friday, March 9, 2018, Claimants

22  received the miscellaneous number associated with this matter. *Id.* at ¶ 5. On

23  Monday, March 12, Claimants filed their Opposition and a simultaneous Request

24  for Immediate Release of Seized Assets Pursuant to 18 U.S.C. § 983(f). *Id.* Also on

25  March 12, however, Claimants' counsel received the Court's March 8, 2018 order

26  granting the government's request, before it had ever received Claimants'

27  Opposition. *Id.*

28

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

## III.   DISCUSSION

The ex parte seizure of Claimants' assets violates Due Process under *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993) and *Matthews v. Eldridge*, 424 U.S. 319 (1976) and those assets must be released.  Furthermore, Claimants qualify for CAFRA's hardship exception, which requires the immediate release of the seized funds.  The Court has authority under §983(f)(7) to order the immediate release of the seized funds in exchange for a lien on the College Building.

### A.   The Seizure Violates Due Process

It is well-established that where "the Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself . . . [the] government action of this consequence must comply with the Due Process Clauses of the Fifth and Fourteenth Amendments." *James Daniel*, 510 U.S. at 52.  The Constitution only affords "exceptions to the general rule requiring predeprivation notice and hearing" in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 53 (emphasis added).

In making this determination, the Supreme Court looks to the three-part inquiry set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *James Daniel*, 510 U.S. at 53.  The *Mathews* analysis requires consideration of (1) "the private interest affected by the official action;" (2) "the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of additional safeguards;" and (3) "the Government's interest, including the administrative burden that additional procedural requirements would impose." *Id.* (citing *Matthews*, 424 U.S. at 335).

The *Mathews* factors favor Claimants. ***First***, the seizure of a means of income "cannot be classified as *de minimis* for purposes of procedural due process."

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    *Id.* at 54.  Claimants have a strong private interest in access to their retirement and

2    other bank accounts and in their ability to support themselves, pay their mortgages,

3    and fund their medical treatments.  **Second**, as to "the risk of an erroneous

4    deprivation" and "the probable value of additional safeguards," the Supreme Court

5    has observed that where

6           a claimant may not receive an adversary hearing until many months after
            the seizure . . . even if the ultimate judicial decision is . . . that the
7           Government lacked probable cause, this determination, coming months
            after the seizure, would not cure the temporary deprivation that an earlier
8           hearing might have prevented.

9    *Id.* at 56.  Claimants maintain their innocence and have offered cooperation with the

10   government to resolve this case.  *See* Lee Decl. at ¶ 12.  But, Pacific College will

11   fail if the government persists in withholding the seized funds without Due Process.

12   Moreover, the Woos will be unable to afford their mortgage or healthcare while Ms.

13   Woo battles breast cancer and Mr. Woo fights Hepatitis B.  Woo Decl. at ¶ 11.

14   The risk of erroneous deprivation is high and additional safeguards are readily

15   available in the form of a lien on real property that is not going anywhere.  **Third**,

16   "the Government's interest," refers to its "specific interest in seizing real property

17   before the forfeiture hearing" to avoid the property's loss or destruction.  *James*

18   *Daniel,* 510 U.S. at 56.   But "real property cannot abscond," and Claimants offer

19   real property to replace the liquid funds that would keep Pacific College afloat

20   pending the investigation.  *Id.* at 57.

21          Claimants have been denied Due Process at every turn.  Their assets were

22   seized over five months ago, and they still have not had an opportunity to be heard.

23   Claimants were denied Due Process again when the Court ruled on the

24   government's request for an extension of time to file the forfeiture complaint before

25   Claimants had the full seven days to respond.  Government's Ex Parte Application

26   at 2 ("Claimants' counsel advised of their intent to oppose the application in writing

27   within the seven-day period provided by this Court's Local Rules.").

28

6.

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA. 90025
TELEPHONE 310-826-4700, FACSIMILE 310-826-4711

**A. Claimants Are Entitled To Immediate Release Of Their Property Under 18 U.S.C. § 983(f)**

Claimants also qualify for the hardship exception to CAFRA, which requires the immediate release of the seized funds. 18 U.S.C. § 983(f); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 101, n.11 (D.D.C. 2012). The Court has authority pursuant to §983(f)(7) to order the immediate release of the seized funds in exchange for a lien on the College Building. *First*, Claimants have taken appropriate steps to request return of the funds and provided the required details set forth in §983(f)(1) to the appropriate officials. *See* Lee Decl. at ¶ 15. *Second*, more than fifteen days have passed since that request was made. *Id.*

This Court now has authority to consider Claimants' hardship request and order the immediate release of the seized funds in exchange for a lien on the College Building. 18 U.S.C. §983(f)(7) ("[T]he court may enter any order necessary to ensure that the value of the property is maintained while the forfeiture action is pending."). Section 983(f) provides that "[a] claimant . . . is entitled to immediate release" of seized property where

> (A) the claimant has a possessory interest in the property; (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial; (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1).

Claimants satisfy every element of CAFRA's hardship provision. *First*, there is no dispute that Claimants have possessory interests in the seized property. The funds were seized from personal and business bank accounts. *Second*, Claimants are intimately connected with the community. Mr. Nelson

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-47

7.

and Ms. Woo have operated Pacific College for twenty five years and the College owns a building in the community. ***Third***, without return of the seized funds, Pacific College will fail, thereby "preventing the functioning of a business" and "preventing individual[s] from working." 18 U.S.C. § 983(f)(1). Mr. and Ms. Woo are also at risk of being unable to make their monthly mortgage and car payments as they relied on the seized funds to live. Woo Decl. at ¶ 10. ***Fourth***, there is no risk to the government. Claimants have offered a lien on the College Building of equal value to the seized funds.

The government argues in its Ex Parte Application that CAFRA's hardship provision does not apply because the government seized currency and Pacific College itself was not seized. (Government's Ex Parte Application at 9). The government relies on §983(f)(8)(A) which provides that relief is not available if the asset "is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized[.]" 18 U.S.C. § 983(f)(8)(A).

The government's argument fails for three reasons: ***First***, Pacific College is a legitimate business. *Nexus Holdings, Inc. v. Dafcan Finance, Inc.*, 531 F. Supp. 2d 839, 845 (S. D. Ohio 2008) (granting return of property and finding that "[t]here appears to be no argument that Nexus is not a legitimate business or that the currency or stock are not assets of a legitimate business."). While the government is investigating potential violations that it claims began "in approximately 2012," (Ex Parte Application at 4) Pacific College has been a legitimate nursing school for twenty five years. Woo Decl. at ¶ 14. No one has argued that Pacific College is an illegitimate enterprise that must be closed and Claimant's counsel have offered the government complete transparency and accountings on-demand if the seized funds are returned. Lee Decl. at ¶ 21.

8.

*EX PARTE APPLICATION FOR RELEASE OF PROPERTY*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1    ***Second***, the government's interpretation of § 983(f) ignores the fact that the

2    "subsection also provides that currency or monetary instruments constituting the

3    assets of a legitimate business may be returned under Section (f)(1)." *Nexus*

4    *Holdings, Inc.*, 531 F. Supp. 2d at 845 ("The Court rejects the notion that it may

5    not apply [§983(f)(1)] factors because Section (f)(8) makes the prior section

6    inapplicable if the property is currency or monetary instruments."). ***Third***, even

7    if the government's interpretation of §983(f) were correct (which it is not), its

8    seizure is starving Pacific College out of existence which is tantamount to a

9    seizure of the College itself. The closure of Pacific College will harm not only

10   Claimants, but the community at large.

11            The Court is empowered to order the immediate release of the seized

12   assets in exchange for a lien on the College Building. 18 U.S.C. §983(f)(7). This

13   outcome would satisfy CAFRA's protections, prevent the Claimants'

14   demonstrable hardship, and permit Pacific College to continue operations while

15   simultaneously protecting the government's interest in the forfeiture.

16   **IV.    CONCLUSION**

17            Based on the foregoing, Claimants respectfully request that the Court order

18   the immediate release of the seized assets in exchange for a lien on Pacific

19   College's real property pursuant to 18 U.S.C. § 983(f)(1)-(7).

20

21   Dated:  March 13, 2018          SPERTUS, LANDES & UMHOFER, LLP

22

23                                  By:   *Elizabeth J. Lee*

24                                        James W. Spertus
                                          Elizabeth J. Lee
25                                        Attorneys for Claimants

26

27

28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

9.

1 | SPERTUS, LANDES & UMHOFER, LLP
2 | James W. Spertus (SBN 159825)
  | Elizabeth J. Lee (SBN 316119)
  | 1990 South Bundy Dr., Suite 705
3 | Los Angeles, California 90025
  | Telephone: (310) 826-4700
4 | Facsimile: (310) 826-4711
  | jim@spertuslaw.com
5 | elizabeth@spertuslaw.com

6 | *Attorneys for Claimants*
  | *William and Ila Nelson*
7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | WESTERN DIVISION

11 |

12 | IN THE MATTER OF THE SEIZURE     CR MISC. NO. 18-00351-SJO
   | OF $278,028.88 IN U.S. CURRENCY;
13 | $100,828.75 IN ACCOUNT FUNDS    **DECLARATION OF ELIZABETH**
   | FROM BANK OF AMERICA           **J. LEE IN SUPPORT OF**
14 | ACCOUNT NO. '3623; AND         **CLAIMANTS' EX PARTE**
   |                                **APPLICATION FOR RELEASE OF**
15 | $370,894.69 IN ACCOUNT FUND    **SEIZED ASSETS PURSUANT TO**
   | FROM BANK OF AMERICA           **18 U.S.C. § 983(f)**
16 | ACCOUNT NO. '2093.

17 |

18 |

19 | I, ELIZABETH J. LEE, hereby state and declare as follows:

20 | 1. I am an attorney duly licensed to practice before this Court and I am

21 | attorney of record for William and Ila Nelson.

22 | 2. On Monday, March 12, 2018 at 4:50 p.m., Claimants' counsel e-

23 | mailed Assistant United States Attorney Frank Kortum and provided notice of

24 | Claimants' intent to file this Ex Parte Application, explaining when and where

25 | the application will be made and the nature of the relief sought. The parties then

26 | conferred telephonically on March 13, 2018. The government indicated that they

27 | oppose the relief requested in this Ex Parte Application. A true and correct copy

28 | of the conferral e-mail correspondence between Elizabeth Lee and AUSA Frank

DECLARATION OF ELIZABETH J. LEE

1  Kortum is attached hereto as Exhibit 14.  Claimants respectfully request

2  argument at the Court's earliest convenience.

3      3.    Good cause supports this ex parte application and Claimants will be

4  irreparably prejudiced if their Ex Parte Application is not considered on an

5  expedited basis.

6      4.    The need for this ex parte was not caused by any fault of Claimants.

7  On March 6, 2018 the government filed its Ex Parte Application to Extend the Civil

8  Forfeiture Complaint Filing Deadline (the "Ex Parte Application").  In its Ex Parte

9  Application, the government indicated that "Claimants' counsel advised of their

10 intent to oppose the application in writing within the seven-day period provided by

11 this Court's Local Rules."  Ex Parte Application at 2.

12     5.    On Friday, March 9, 2018, Claimants received the miscellaneous

13 number associated with this matter and diligently filed their Opposition and

14 Request for Immediate Release of Seized Assets Pursuant to 18 U.S.C. § 983(f)

15 on the following business day, Monday, March 12, 2018.  Also on March 12,

16 however, Claimants' counsel received the Court's March 8, 2018 order granting

17 the government's request, before it had ever received Claimants Opposition.

18 Because Claimants were not afforded the opportunity to respond to the

19 government's ex parte and because of the urgent nature of the impending harm to

20 Claimants and the community, consideration of Claimant's hardship request on

21 an expedited basis is appropriate.

22     6.    Claimants are suffering extreme hardship as a result of the seizure at

23 issue in this case and will suffer additional hardship as a result of the Order delaying

24 the time in which the government may file its forfeiture complaint to June 4, 2018,

25 which also delays Claimants' opportunity to challenge the complaint, Claimants

26 respectfully request that the Court order the immediate release of the seized assets in

27 exchange for a lien on Pacific College's real property pursuant to 18 U.S.C. §

28 983(f)(1)-(7).

DECLARATION OF ELIZABETH J. LEE

7.    The facts supporting this Ex Parte Application for relief pursuant to 18 U.S.C. §983(f)'s hardship provision requirement the immediate release of seized assets are as follows:  On October 10, 2017, the government executed seizure warrants on bank accounts and a search warrant at Pacific College, and seized the currency that is the subject of this proceeding, totaling $749,752.32, which excludes Pacific College's operating account, and the personal accounts of Ms. Woo's daughter, Jennifer Woo, and Marcus Tromp, a Pacific College employee.  A true and correct copy of the November 16, 2017 Notice of Seizure to William Nelson, Ila Nelson, Donna Woo and William Woo are attached hereto as Exhibits 1, 2, 3, and 4 respectively; a true and correct copy of the January 16, 2018 letter to AUSA Daniel Ahn is attached hereto as Exhibit 5, p. 2.

8.    These seizures left Pacific College without the means to pay its monthly overhead of approximately $400,000.  A true and correct copy of the January 28, 2018 letter to AUSA Kortum disclosing Claimants' finances is attached hereto as Exhibit 6.

9.    Shortly after the seizure, the Department of Education ("DOE") placed Pacific College on Heightened Cash Monitoring 2 ("HCM 2") status.  A true and correct copy of the January 31, 2018 letter from T. Bowers to the DOE is attached hereto as Exhibit 7.

10.    HCM 2 status means that the College is no longer eligible to receive funds under the DOE's advance payment method. *See* Exhibit 5, p. 2.  Instead, the College must first make disbursements to students, then submit reimbursement requests to the DOE, which can take months. *Id.*  The DOE has confirmed that the only reason the DOE placed the College on HCM 2 status was because the FBI executed search warrants, and there is no other reason for the HCM 2 status. *See* Exhibit 7.

11.    Since October 2017, Pacific College has barely survived, eking by each month on contributions from Mr. Nelson and Ms. Woo, who have drawn

DECLARATION OF ELIZABETH J. LEE

1 | down and closed their personal savings accounts in an effort to save the school

2 | that they built from the ground twenty five years ago.  *See* Exhibit 6.  But Mr.

3 | Nelson and Ms. Woo are well past retirement age and cannot afford to keep the

4 | College afloat any longer.  A true and correct copy of the February 7, 2018 letter

5 | from T. Bowers and J. Spertus to AUSA Steven Welk regarding Pacific

6 | College's funding since October 2017 is attached hereto as Exhibit 8.

7 |       12.    In mid-December 2017, Claimants' Counsel reached out to the

8 | government to offer their cooperation in the investigation and requested a

9 | meeting.  A true and correct copy of the December 16 e-mail correspondence

10 | with between J. Spertus and D. Ahn is attached hereto as Exhibit 9.

11 |       13.    On January 16, 2018, my partner James Spertus and I, along with

12 | Terree Bowers and Grace Du on behalf of Pacific College, Eliot Krieger on

13 | behalf of Donna Woo, Tom Brown on behalf of Marcus Tromp, and Andrea

14 | Oxman on behalf of all defendants in the related civil case *Castillo et al. v.*

15 | *Pacific College et al., OSC Case No. 30-2017-00940796-CU-WT-CJC*

16 | (collectively, "Claimants' Counsel") sent a detailed factual summary to the

17 | government addressing each category that the government identified as an area

18 | of concern. *See* Exhibit 5.

19 |       14.    On January 19, 2018, Claimants' Counsel attended a meeting with

20 | representatives from the government, including AUSA Daniel Ahn, Forfeiture

21 | AUSA Frank Kortum by telephone, the investigating FBI agents, and DOE

22 | representatives, and Claimants' Counsel presented a PowerPoint to the

23 | government and answered the government's questions.

24 |       15.    At the January 19, 2018 meeting, Claimants' Counsel also identified

25 | the seized funds as belonging to Claimants, indicated that Claimants have

26 | sufficient ties to the community to provide assurance that the property would

27 | remain available for trial, and explained that Pacific College would fail without

28 | return of the seized funds and that Claimants' hardship outweighs any risk that

---

4

DECLARATION OF ELIZABETH J. LEE

1    the property would be destroyed.  Claimants further explained that the seized

2    funds were not proceeds of any crime, nor would they be used to facilitate any

3    crime.

4        16.    On January 28, 2018, at the government's request, Claimants'

5    Counsel provided the government with additional information about Pacific

6    College's, Mr. Nelson's, and Ms. Woo's remaining bank balances. *See* Exhibit

7    6.

8        17.    Soon thereafter, Terree Bowers offered a lien to the government on

9    behalf of Pacific College to secure the return of the seized funds, enabling the

10   College to operate pending the investigation.  A true and correct copy of the

11   February 2, 2018 e-mail correspondence between T. Bowers and U.S. Attorney

12   Nicola Hanna is attached hereto as Exhibit 10.

13       18.    Shortly thereafter the government rejected the proposal. *Id.*

14       19.    As a result of the investigation, Claimants cannot obtain personal

15   loans to fund the College.  On February 3, 2017, Ms. Woo was informed that

16   Bank of America would be closing all of her accounts.  A true and correct copy

17   of the February 3, 2018 e-mail correspondence between J. Spertus and D. Ahn is

18   attached hereto as Exhibit 11.  Ms. Woo had a thirty-year relationship with Bank

19   of America and her accounts have been closed as a result of the investigation. *Id.*

20       20.    Claimants' Counsel submitted another letter to the government on

21   February 7, 2018, specifying how the College has funded operations since

22   October 2017.  Exhibit 8.  These measures have included slashing employee

23   salaries and making the above-mentioned contributions from personal savings.

24   *Id.*

25       21.    Claimants' Counsel also assured the government that Claimants

26   would provide complete transparency and a full accounting upon request if the

27   government agreed to release the seized funds.  A true and correct copy of the

28

DECLARATION OF ELIZABETH J. LEE

1  February 8, 2018 e-mail correspondence from J. Spertus to S. Welk is attached

2  hereto as Exhibit 12.

3        22.    Four days later, the government informed Claimants' Counsel that

4  the government would decline the offer to exchange a lien on the campus

5  building for the return of the seized funds.  A true and correct copy of the

6  February 12, 2018 letter from AUSA S. Welk to T. Bowers and J. Spertus is

7  attached hereto as Exhibit 13.

8        23.    On March 6, 2018, the government filed its Ex Parte Application to

9  Extend the Civil Forfeiture Complaint Filing Deadline (the "Ex Parte")

10  requesting until June 4, 2018 to file their forfeiture complaint.

11        I declare under penalty of perjury under the laws of the United States that

12  the foregoing facts are true and correct. Executed this 13th day of March, 2018,

13  in

14  Los Angeles, California.

15

16  Dated: March 13, 2018                    Respectfully submitted,

17

18                                          _____

                                            Elizabeth J. Lee

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

EXHIBIT 1



**U.S. Department of Justice**

Federal Bureau of Investigation

*Washington, DC  20535*

Mr. William L. Nelson
c/o Earll M. Pott Esq.
Kinedinst Attorneys
501 W. Broadway, Suite 600
San Diego, CA 92101

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

*Failure to file a claim may result in the seized property being forfeited to the United States*

## SEIZED PROPERTY IDENTIFYING INFORMATION

| | |
|---|---|
| Notice Date:   November 16, 2017 | Asset ID Number:   Multiple Assets |
| Description of Seized Property:   See Attached List | |
| Seizure Date and Location:   See Attached List | |
| Forfeiture Authority:   See Attached List | |

I.   **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM**.   *If you do not file a claim, you will waive your right to contest the forfeiture of the asset. Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

A.   **To File a Claim**:   A claim must be filed to contest the forfeiture. A claim should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the Federal Bureau of Investigation (FBI), Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.

B.   **Time Limits**:   A claim must be filed within 35 days of the date of this letter; therefore, you must file your claim by **December 21, 2017**.   *See* 18 U.S.C. § 983(a)(2).   A claim is deemed filed on the date received by the agency at the address listed above.

C.   **Requirements for Claim**:   A claim must (1) be in writing, (2) describe the seized property, (3) state your ownership or other interest in the property and (4) be **made under oath**, subject to penalty of perjury.   *See* 18 U.S.C. § 983(a)(2)(C) and 28 U.S.C. § 1746.

D.   **Claim Forms**:   A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above.   *See* 18 U.S.C. § 983(a)(2)(D).

E.   **Supporting Evidence**:   Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

F.   **When You File a Claim**:   A timely claim stops the administrative forfeiture proceeding.   The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.

G.   **Penalties for Filing False or Frivolous Claims**:   If you intentionally file a frivolous claim you may be subject to a civil fine.   *See* 18 U.S.C. § 983(h).   If you intentionally submit a claim containing false information, you may be subject to prosecution.   *See* 18 U.S.C. § 1001.

Mr.William L. Nelson                                    Notice of Seizure

H.   **If No Claim is Filed**:  Failure to file a claim by **December 21, 2017** may result in the property being forfeited to the United States.

I.   **No Attorney Required**:  You do not need an attorney to file a claim.   You may, however, hire an attorney to represent you in filing a claim.

II.   **TO REQUEST RELEASE OF PROPERTY BASED ON HARDSHIP**

A.   Upon the filing of a proper claim, a Claimant may request release of the seized property during the pendency of the forfeiture proceeding due to hardship if the Claimant is able to meet specific conditions.   *See* 18 U.S.C. § 983(f); 28 C.F.R. § 8.15.

B.   The hardship request must be in writing and Claimant must establish the following:
- Claimant has a possessory interest in the property;
- Claimant has sufficient ties to the community to assure that the property will be available at the time of trial; and
- Government's continued possession will cause a substantial hardship to the Claimant.

C.   A complete list of the hardship provisions can be reviewed at 18 U.S.C. § 983(f) and 28 C.F.R. § 8.15. Some assets are not eligible for release.

III.   **THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.**

**TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION**

A.   You may file both a claim (see section I above) and a Petition for Remission or Mitigation (Petition).   If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

B.   A petition should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the FBI, Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.   It must be received within thirty (30) days of your receipt of this Notice. See 28 C.F.R. Parts 8 and 9.

C.   The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury.   *See* 28 U.S.C. § 1746.

D.   The ruling official in administrative forfeiture cases is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel. The ruling official in judicial forfeiture cases is the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice.   See 28 C.F.R. § 9.1.

E.   The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

Mr.William L. Nelson                                    Notice of Seizure

**Asset List**

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 10, 2017 by the FBI at Santa Ana, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000058 | $100,828.75 in funds from Bank Account Number ▮▮▮▮▮▮▮▮▮▮ in the name of William Nelson, Ila Nelson, William Woo, and Donna Woo at Bank of America, Santa Ana, CA. | $100,828.75 | ▮▮▮▮▮▮▮▮ |
| 18-FBI-000060 | $370,894.69 in funds from Bank Account Number ▮▮▮▮▮▮▮▮▮▮ in the name of William L. Nelson and Ila M. Nelson, aka Ila M. Beaver at Bank of America, Santa Ana, CA. | $370,894.69 | ▮▮▮▮▮▮▮▮ |

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 5, 2017 by the FBI at Costa Mesa, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000056 | $278,028.88 U.S. Currency seized from various locations in the office of William Nelson at Pacific College, 3160 Red Hill Ave., Costa Mesa, CA. | $278,028.88 | |

# EXHIBIT 2

EXHIBIT 2



**U.S. Department of Justice**

Federal Bureau of Investigation

*Washington, DC  20535*

Mrs. Ila Marjorie Nelson aka Ila Beaver
c/o Earll M. Pott Esq.
Kinedinst Attorneys
501 W. Broadway, Suite 600
San Diego, CA 92101

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

*Failure to file a claim may result in the seized property being forfeited to the United States*

## SEIZED PROPERTY IDENTIFYING INFORMATION

| Notice Date:  November 16, 2017 | Asset ID Number:  Multiple Assets |
|---|---|
| Description of Seized Property:   See Attached List | |
| Seizure Date and Location:   See Attached List | |
| Forfeiture Authority:   See Attached List | |

I.   **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM.** *If you do not file a claim, you will waive your right to contest the forfeiture of the asset. Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

A.   **To File a Claim:**   A claim must be filed to contest the forfeiture. A claim should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the Federal Bureau of Investigation (FBI), Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.

B.   **Time Limits:**   A claim must be filed within 35 days of the date of this letter; therefore, you must file your claim by **December 21, 2017.** *See* 18 U.S.C. § 983(a)(2).   A claim is deemed filed on the date received by the agency at the address listed above.

C.   **Requirements for Claim:**   A claim must (1) be in writing, (2) describe the seized property, (3) state your ownership or other interest in the property and (4) be **made under oath**, subject to penalty of perjury.  *See* 18 U.S.C. § 983(a)(2)(C) and 28 U.S.C. § 1746.

D.   **Claim Forms:**   A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above.  *See* 18 U.S.C. § 983(a)(2)(D).

E.   **Supporting Evidence:**   Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

F.   **When You File a Claim:**   A timely claim stops the administrative forfeiture proceeding.   The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.

G.   **Penalties for Filing False or Frivolous Claims:**   If you intentionally file a frivolous claim you may be subject to a civil fine.  *See* 18 U.S.C. § 983(h).   If you intentionally submit a claim containing false information, you may be subject to prosecution.  *See* 18 U.S.C. § 1001.

Mrs. Ila Marjorie Nelson aka Ila Beaver                    Notice of Seizure

    H.    **If No Claim is Filed:**   Failure to file a claim by **December 21, 2017** may result in the property being forfeited to the United States.

    I.    **No Attorney Required**:   You do not need an attorney to file a claim.   You may, however, hire an attorney to represent you in filing a claim.

**II.   TO REQUEST RELEASE OF PROPERTY BASED ON HARDSHIP**

    A.    Upon the filing of a proper claim, a Claimant may request release of the seized property during the pendency of the forfeiture proceeding due to hardship if the Claimant is able to meet specific conditions.   *See* 18 U.S.C. § 983(f); 28 C.F.R. § 8.15.

    B.    The hardship request must be in writing and Claimant must establish the following:
- Claimant has a possessory interest in the property;
- Claimant has sufficient ties to the community to assure that the property will be available at the time of trial; and
- Government's continued possession will cause a substantial hardship to the Claimant.

    C.    A complete list of the hardship provisions can be reviewed at 18 U.S.C. § 983(f) and 28 C.F.R. § 8.15. Some assets are not eligible for release.

**III.   THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.**

    **TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION**

    A.    You may file both a claim (see section I above) and a Petition for Remission or Mitigation (Petition).   If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

    B.    A petition should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the FBI, Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.   It must be received within thirty (30) days of your receipt of this Notice. See 28 C.F.R. Parts 8 and 9.

    C.    The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury.   *See* 28 U.S.C. § 1746.

    D.    The ruling official in administrative forfeiture cases is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel. The ruling official in judicial forfeiture cases is the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice.   See 28 C.F.R. § 9.1.

    E.    The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

Mrs. Ila Marjorie Nelson aka Ila Beaver                              Notice of Seizure

**Asset List**

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 10, 2017 by the FBI at Santa Ana, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000058 | $100,828.75 in funds from Bank Account Number ▮▮▮▮▮ in the name of William Nelson, Ila Nelson, William Woo, and Donna Woo at Bank of America, Santa Ana, CA. | $100,828.75 | ▮▮▮▮▮ |
| 18-FBI-000060 | $370,894.69 in funds from Bank Account Number ▮▮▮▮▮ in the name of William L. Nelson and Ila M. Nelson, aka Ila M. Beaver at Bank of America, Santa Ana, CA. | $370,894.69 | ▮▮▮▮▮ |

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 5, 2017 by the FBI at Costa Mesa, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000056 | $278,028.88 U.S. Currency seized from various locations in the office of William Nelson at Pacific College, 3160 Red Hill Ave., Costa Mesa, CA. | $278,028.88 | |

# EXHIBIT 3

EXHIBIT 3



**U.S. Department of Justice**

Federal Bureau of Investigation

*Washington, DC  20535*

Mrs. Donna Leung Woo
c/o Earll M. Pott Esq.
Kinedinst Attorneys
501 W. Broadway, Suite 600
San Diego, CA 92101

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

*Failure to file a claim may result in the seized property being forfeited to the United States*

## SEIZED PROPERTY IDENTIFYING INFORMATION

| | |
|---|---|
| **Notice Date:**  November 16, 2017 | **Asset ID Number:**   Multiple Assets |
| **Description of Seized Property:**   See Attached List | |
| **Seizure Date and Location:**   See Attached List | |
| **Forfeiture Authority:**   See Attached List | |

I.  **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM.**  *If you do not file a claim, you will waive your right to contest the forfeiture of the asset. Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

   A.  **To File a Claim:**   A claim must be filed to contest the forfeiture. A claim should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the Federal Bureau of Investigation (FBI), Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.

   B.  **Time Limits:**   A claim must be filed within 35 days of the date of this letter; therefore, you must file your claim by **December 21, 2017.**  *See* 18 U.S.C. § 983(a)(2).   A claim is deemed filed on the date received by the agency at the address listed above.

   C.  **Requirements for Claim:**   A claim must (1) be in writing, (2) describe the seized property, (3) state your ownership or other interest in the property and (4) be **made under oath**, subject to penalty of perjury.  *See* 18 U.S.C. § 983(a)(2)(C) and 28 U.S.C. § 1746.

   D.  **Claim Forms:**   A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above.  *See* 18 U.S.C. § 983(a)(2)(D).

   E.  **Supporting Evidence:**   Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

   F.  **When You File a Claim:**   A timely claim stops the administrative forfeiture proceeding.   The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.

   G.  **Penalties for Filing False or Frivolous Claims:**   If you intentionally file a frivolous claim you may be subject to a civil fine.  *See* 18 U.S.C. § 983(h).   If you intentionally submit a claim containing false information, you may be subject to prosecution.  *See* 18 U.S.C. § 1001.

Mrs. Donna Leung Woo                                    Notice of Seizure

H.  **If No Claim is Filed**:   Failure to file a claim by **December 21, 2017** may result in the property being forfeited to the United States.

I.  **No Attorney Required**:   You do not need an attorney to file a claim.   You may, however, hire an attorney to represent you in filing a claim.

## II.  TO REQUEST RELEASE OF PROPERTY BASED ON HARDSHIP

A.  Upon the filing of a proper claim, a Claimant may request release of the seized property during the pendency of the forfeiture proceeding due to hardship if the Claimant is able to meet specific conditions.   *See* 18 U.S.C. § 983(f); 28 C.F.R. § 8.15.

B.  The hardship request must be in writing and Claimant must establish the following:
  - Claimant has a possessory interest in the property;
  - Claimant has sufficient ties to the community to assure that the property will be available at the time of trial; and
  - Government's continued possession will cause a substantial hardship to the Claimant.

C.  A complete list of the hardship provisions can be reviewed at 18 U.S.C. § 983(f) and 28 C.F.R. § 8.15. Some assets are not eligible for release.

## III.  THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.

### TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION

A.  You may file both a claim (see section I above) and a Petition for Remission or Mitigation (Petition).   If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

B.  A petition should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the FBI, Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.   It must be received within thirty (30) days of your receipt of this Notice. See 28 C.F.R. Parts 8 and 9.

C.  The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury.   *See* 28 U.S.C. § 1746.

D.  The ruling official in administrative forfeiture cases is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel. The ruling official in judicial forfeiture cases is the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice.   See 28 C.F.R. § 9.1.

E.  The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

Mrs. Donna Leung Woo                                    Notice of Seizure

**Asset List**

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 10, 2017 by the FBI at Santa Ana, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000058 | $100,828.75 in funds from Bank Account Number ▮▮▮▮▮▮ in the name of William Nelson, Ila Nelson, William Woo, and Donna Woo at Bank of America, Santa Ana, CA. | $100,828.75 | ▮▮▮▮▮▮▮▮ |

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 5, 2017 by the FBI at Costa Mesa, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000056 | $278,028.88 U.S. Currency seized from various locations in the office of William Nelson at Pacific College, 3160 Red Hill Ave., Costa Mesa, CA. | $278,028.88 | |

# EXHIBIT 4

EXHIBIT 4



**U.S. Department of Justice**

Federal Bureau of Investigation

*Washington, DC   20535*

Mr. William On Woo Jr.
c/o Earll M. Pott Esq.
Kinedinst Attorneys
501 W. Broadway, Suite600
San Diego, CA 92101

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

*Failure to file a claim may result in the seized property being forfeited to the United States*

## SEIZED PROPERTY IDENTIFYING INFORMATION

| | |
|---|---|
| **Notice Date:**   November 16, 2017 | **Asset ID Number:**   Multiple Assets |
| **Description of Seized Property:**   See Attached List | |
| **Seizure Date and Location:**   See Attached List | |
| **Forfeiture Authority:**   See Attached List | |

I.   **TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM.**   *If you do not file a claim, you will waive your right to contest the forfeiture of the asset. Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

A.   **To File a Claim:**   A claim must be filed to contest the forfeiture. A claim should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the Federal Bureau of Investigation (FBI), Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.

B.   **Time Limits:**   A claim must be filed within 35 days of the date of this letter; therefore, you must file your claim by **December 21, 2017.**   *See* 18 U.S.C. § 983(a)(2).   A claim is deemed filed on the date received by the agency at the address listed above.

C.   **Requirements for Claim:**   A claim must (1) be in writing, (2) describe the seized property, (3) state your ownership or other interest in the property and (4) be **made under oath**, subject to penalty of perjury.   *See* 18 U.S.C. § 983(a)(2)(C) and 28 U.S.C. § 1746.

D.   **Claim Forms:**   A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above.   *See* 18 U.S.C. § 983(a)(2)(D).

E.   **Supporting Evidence:**   Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

F.   **When You File a Claim:**   A timely claim stops the administrative forfeiture proceeding.   The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.

G.   **Penalties for Filing False or Frivolous Claims:**   If you intentionally file a frivolous claim you may be subject to a civil fine.   *See* 18 U.S.C. § 983(h).   If you intentionally submit a claim containing false information, you may be subject to prosecution.   *See* 18 U.S.C. § 1001.

Mr.William On Woo Jr.                                          Notice of Seizure

H.  **If No Claim is Filed:**   Failure to file a claim by **December 21, 2017** may result in the property being forfeited to the United States.

I.  **No Attorney Required**:   You do not need an attorney to file a claim.   You may, however, hire an attorney to represent you in filing a claim.

II.  **TO REQUEST RELEASE OF PROPERTY BASED ON HARDSHIP**

A.  Upon the filing of a proper claim, a Claimant may request release of the seized property during the pendency of the forfeiture proceeding due to hardship if the Claimant is able to meet specific conditions.   *See* 18 U.S.C. § 983(f); 28 C.F.R. § 8.15.

B.  The hardship request must be in writing and Claimant must establish the following:
   - Claimant has a possessory interest in the property;
   - Claimant has sufficient ties to the community to assure that the property will be available at the time of trial; and
   - Government's continued possession will cause a substantial hardship to the Claimant.

C.  A complete list of the hardship provisions can be reviewed at 18 U.S.C. § 983(f) and 28 C.F.R. § 8.15. Some assets are not eligible for release.

III.  **THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.**

**TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION**

A.  You may file both a claim (see section I above) and a Petition for Remission or Mitigation (Petition).   If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

B.  A petition should be filed by mailing it with the U.S. Postal Service or via a Commercial Delivery Service to the FBI, Attn: Forfeiture Paralegal Specialist, 11000 Wilshire Blvd., Suite 1700, FOB, Los Angeles, CA 90024.   It must be received within thirty (30) days of your receipt of this Notice. See 28 C.F.R. Parts 8 and 9.

C.  The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury.   *See* 28 U.S.C. § 1746.

D.  The ruling official in administrative forfeiture cases is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel. The ruling official in judicial forfeiture cases is the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, Department of Justice.   See 28 C.F.R. § 9.1.

E.  The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

Mr. William On Woo Jr.                                     Notice of Seizure

**Asset List**

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 10, 2017 by the FBI at Santa Ana, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000058 | $100,828.75 in funds from Bank Account Number ███████████ in the name of William Nelson, Ila Nelson, William Woo, and Donna Woo at Bank of America, Santa Ana, CA. | $100,828.75 | ████████████ |

**Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on October 5, 2017 by the FBI at Costa Mesa, California.

**Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(A) and the following additional federal laws:   19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 18-FBI-000056 | $278,028.88 U.S. Currency seized from various locations in the office of William Nelson at Pacific College, 3160 Red Hill Ave., Costa Mesa, CA. | $278,028.88 | |

# EXHIBIT 5

EXHIBIT 5

SPERTUS

LANDES &

UMHOFER
LLP

<u>VIA EMAIL AND COURIER</u>

January 16, 2018

Mr. Daniel H. Ahn
Assistant United States Attorney
United States Attorney's Office
411 West 4th Street, No. 8142
Santa Ana, California 92701

      Re:    <u>Pacific College / FBI Investigation</u>

Dear Mr. Ahn,

     I appreciate your willingness to meet with us on Friday, January 19, 2018 at 1:30 pm, to discuss the government's investigation of this case. We will be prepared to address the four allegations that you told me were underlying the government investigation, but we have not been provided with copies of the search warrant affidavits and have no specific facts to rebut. The issues you identified were: (1) grade inflation; (2) lowering admissions criteria; (3) falsification of attendance records; and (4) manipulation of refund checks where a student receives financial aid in excess of tuition and does not get the excess refunded. These issues were raised in the civil case captioned *Castillo et al. v. Pacific College et al.*, OSC Case No. 30-2017-00940796-CU-WT-CJC, so we are familiar with them and can readily disprove them.

     Drafting this letter was a collaborative effort by all counsel representing targets in this case. I represent William Nelson, Terree Bowers represents Pacific College, Eliot Krieger represents Donna Woo, Tom Brown represents Marcus Tromp, and Andrea Oxman represents all defendants in the *Castillo* litigation. All counsel will attend our January 19 meeting, and we are hopeful you will attend with the investigating agents and the forfeiture AUSA. We have gathered the facts we want you to know, and set them forth in detail below so that you can review them in advance and ask specific questions at the meeting if you want. We are hopeful that the facts set forth below will satisfy the government that there has been no wrongdoing by Pacific College. Our goal is to convince the government to release the seized funds pending the outcome of its investigation because the College does not have the liquidity it needs to continue operations while the government's investigation unfolds. All counsel are committed to working cooperatively with the government to answer questions the government may have, but unless the government releases the seized funds in the near future, the College will fail due to the mere fact that the government is conducting an investigation, whether or not the government finds any wrongdoing by the College.

James W. Spertus | jim@spertuslaw.com
Samuel A. Josephs | samuel@spertuslaw.com
Elizabeth J. Lee | elizabeth@spertuslaw.com
Julia Tuverson | julia@spertuslaw.com

Matthew Umhofer | matthew@spertuslaw.com
Jennifer E. LaGrange | jennifer@spertuslaw.com
John Hanusz | john@spertuslaw.com
Diane Bang | diane@spertuslaw.com
Payton Lyon | payton@spertuslaw.com

Ezra D. Landes | ezra@spertuslaw.com
Dolly K. Hansen | dolly@spertuslaw.com
J. Anthony King | anthony@spertuslaw.com
Suzanne S. Obeda | suzie@spertuslaw.com

SPERTUS

LANDES &

UMHOFER
LLP

Page 2 of 22

I assume you know that the mere fact that the FBI executed search warrants caused the United States Department of Education ("DOE") to place the College on Heightened Cash Monitoring 2 ("HCM 2") status. This status means that the College is no longer eligible to receive funds under the advance payment method used to distribute funds to almost all schools. Instead, the College must first make disbursements to students, and then it can submit reimbursement payment requests to the DOE, but reimbursements take months to receive and the College is struggling to make payroll. The DOE confirmed that the only reason the College was placed on HCM 2 status was because the FBI exercised search warrants and, since there is a DOE agent on your investigative team, that fact should be easy to confirm. It should also be easy to confirm through your DOE agent that on January 11, 2018, the DOE notified the College that it had completed its independent investigation into the issues you are investigating and found no wrongdoing. The DOE investigation began 18 months ago, and involved a complete audit of the College's Bank of America accounts, along with a review of over 300 student files. There are simply no facts to substantiate the allegations made in the civil case, and the facts set forth in detail below affirmatively disprove those allegations. We are hopeful that with this evidence, the government will release the seized funds and allow the College to continue operations pending the final outcome of the investigation. Thank you for your time and consideration.

## I.    Alleged Grade Inflation in the Vocational Nursing Program

Pacific College is a private college accredited by the Western Association of Schools and Colleges ("WASC"). WASC utilizes research based guidelines focusing on student achievement and schoolwide learner outcomes to accredit colleges and universities. The WASC accreditation process is vigorous and includes a site visit and recommendations for a college's or institution's ongoing improvement.

Pacific College is subject to regulation by the California Board of Vocational Nursing and Psychiatric Technicians ("BVNPT"), the DOE, and the California Bureau for Private Postsecondary Education ("BPPE"),[1] amongst other local agencies. The College's Catalog and Vocational Nursing Student Handbook set forth the policies and procedures the College adheres to in its Vocational Nursing ("VN") Program. Both written documents have been submitted and approved. The BVNPT approves the VN Handbook and the DOE approves the College catalog.

---

[1] The BPPE is a unit of the California Department of Consumer Affairs. The Bureau's mission is to protect "students and consumers through the oversight of California's private postsecondary educational institutions by conducting qualitative reviews of educational programs and operating standards, proactively combatting unlicensed activity, impartially resolving student and consumer complaints, and conducting outreach." *See*, http://www.bppe.ca.gov/.



SPERTUS

LANDES &

UMHOFER
LLP

Page 3 of 22

All VN students are provided with copies of each document at the start of their enrollment at Pacific College.[2]

### A.      Pacific College's Grading Policy for Theory Coursework in the VN Program

The VN Program at Pacific College is made up of five (5) terms with each term containing a theory component (classroom instruction) and a clinical component (field experience).  Based on the allegations in the civil complaint filed by plaintiffs David Castillo and Sarah Wilkinson, Pacific College believes that the government is currently investigating and concerned about the grading of students' theory coursework.  (The grading policy and rubric for students' clinical work is set forth in the VN Student Handbook (Ex. B) at pp. 40-42.)

During Terms 1 through 4 of the VN Program, students' theory grades are weighted and based on these four (4) criteria:

(1) Tests (representing 75% of students' grades);

(2) Class Projects (representing 10% of students' grades);

(3) Online Assignments (representing 5% of students' grades); and,

(4) Content Mastery Assessment (representing 10% of students' grades).[3]

Students' grades during Term 5 of the VN Program are based on these four (4) different criteria:

(1) Tests (representing 75% of students' grades);

(2) Online Assignments (representing 5% of students' grades);

(3) Content Mastery Assessment (representing 10% of students' grades); and

-----------------------

[2] A copy of Pacific College's 2016-2017 Catalog is included in the accompanying Compendium of Exhibits as Exhibit A.  A copy of Pacific College's Vocational Nursing Student Handbook 2017-2018 is included in the accompanying Compendium of Exhibits as Exhibit B.

[3] For students who began their enrollment at Pacific College prior to November, 2015, these four (4) criteria were weighted slightly differently.  Tests represented 65% of students' grades, online assignments represented 10% of students' grades, Content Mastery Assessment represented 20% of students' grades, and Projects represented 5% of students' grades.  (A copy of Pacific College's 2014-2015 VN Student Handbook is attached to the accompanying Compendium of Exhibits as Exhibit C.  The College's grading policies are detailed at pages 36-37 of Exhibit C.)  These criteria and weighted percentages were applied to both groups of students that Sarah Wilkinson instructed, as the first group of students she taught was enrolled as of April 27, 2015, and the second group of students she taught was enrolled as of July 24, 2015.



SPERTUS

LANDES &

UMHOFER
LLP

Page 4 of 22

(4) ATI Higher Education Capstone Course (representing 10% of students' grades).[4]

Capstone is an online review course offered by a third-party company called ATI Nursing Education ("ATI"). The Capstone Course helps prepare students for Pacific College's exit exam and the National Council Licensure Examination for Practical Nurses ("NCLEX-PN"), which is administered by the National Council of State Boards of Nursing (NCSBN) and overseen by the BVNPT. The NCLEX-PN is the state licensing exam for vocational nurses.

To progress in the College's VN Program, a student must receive a minimum final grade of 75%. However, pursuant to the College's written policies and VN Student Handbook, which the BVNPT approved, the following additional procedural safeguards are in place:

> A student whose final grade is between 70 and 74.99% may appeal to progress to the next level [or term]. The appeal must be in writing and addressed to the VN Program Director. The appeal must contain statements indicating acknowledgment of poor academic performance and expression of commitment to learning. The student is then given remediation coursework which must be submitted to the VN Program Director at a designated date. Upon submission of the remediation coursework, the student's final grade shall be converted to 75%. The student may be allowed to progress to the next course but must be placed on probation for poor academic performance.

> A student on probation for poor academic performance may NOT be allowed to progress [again to the next term] if he/she continues to get a final grade below 75%.

VN Student Handbook (Ex. B) at p. 42, Academic Progression (emphasis added).

If the VN Program Director grants a student's appeal to progress to the next term, any remediation coursework assigned must be completed within the 7-day remediation period designated by the College at the end of each term. (VN Student Handbook (Ex. B) at p. 43.) Pacific College's VN Student Handbook explains this policy and the timing for remediation work. (*Id.*) It provides for End Of Term Remediation as follows:

> This is a 7-day period where a student must complete all the necessary requirements to be able to move on to the next term. Attendance/Academic probation may be given to a student to advance to the next term. Failure to complete the remediation may result in repeating the unsatisfactory term or termination from the program.

---

[4] Prior to November, 2015, the same weighted criteria were used for all 5 terms of students' theory coursework. *See* fn. 3 for grading criteria.



SPERTUS
LANDES &
UMHOFER
LLP

VN Student Handbook (Ex. B) at p. 43 (emphasis original). In other words, students who fail to achieve a final grade of 75% in a given term, but obtain a final grade between 70% and 74.99%, may nevertheless be permitted in Pacific College's discretion to advance to the next term, subject to being placed on academic probation and meeting the conditions of the probation in the next term. A student who does not obtain a final grade of 75% or higher in the next term does not meet the terms of academic probation and will not be permitted to progress to the next term. (*See* VN Student Handbook (Ex. B) at p. 42.)

In the currently stayed civil case, *Castillo, et al. v. Pacific College, et al.*, Case No. 30-2017-00940796-CU-WT-CJC (hereinafter, the "Civil Matter"), Plaintiffs Sarah Wilkinson and David Castillo allege that Pacific College engaged in unlawful and fraudulent conduct when the College allegedly "altered" and "inflated" students' grades. (Civil Matter Complaint, ¶ 13(1), (2).) However, Pacific College's written policies, which were approved by the BVNPT, make clear that there are certain circumstances in which: (1) students may appeal to have their grades changed, provided that they complete a written appeal, remediation coursework, and obtain the Program Director's approval; and (2) students may advance to the next term in the VN Program notwithstanding that they did not achieve a passing final grade of 75%. There is nothing fraudulent or unlawful about either scenario or the College's policies in this regard.

Further, Pacific College elected to set the threshold for a minimum passing final grade at 75% when it was free to set it at a lower percentage of 70%. It elected not to make the threshold 70% because it wanted to ensure that its students were sufficiently prepared and trained to work as vocational nurses and pass the State's licensing exams. To be clear, neither the BVNPT, nor the DOE, required Pacific College to set the minimum final grade threshold at 75%. Indeed, many nursing colleges set the minimum passing grade threshold at 70%. *See* Ex. D (Blake Austin College[5] VN Program Handbook 2017) at p. 7 (requiring students to receive no less than 70% to pass VN courses) (emphasis added). If Pacific College was merely attempting to pass students through the VN Program in order to collect their tuition and profit without regard to students' training, the College would have set the minimum passing grade threshold as low as possible. Pacific College, however, has done just the opposite, and requires its students to meet a higher bar.

The quality of the education and training that the VN Program students receive at Pacific College is further evidenced by the College's pass rate on the state licensing exam. <u>Pacific College's VN Program graduates pass the NCLEX-PN at a rate exceeding the California state average. Specifically, on March 24, 2017, the BVNPT acknowledged that the College's annual pass rate on the NCLEX-PN was 80% -- six (6) percentage point above the State average.</u> (March 24, 2017 correspondence to Pacific College VN Program Director Carmencita Recto (Ex. E) at p. 2; *see also* 16 C.C.R. § 2530(l) (VN programs must maintain a yearly average minimum pass rate on the state licensure exam that does not fall below 10 percentage points of

---

[5] Blake Austin College is located in Vacaville, California.



SPERTUS
LANDES &
UMHOFER
LLP

Page 6 of 22

the state average pass rate).)  More recently, the College's pass rate on the state licensing exam has increased to approximately 93% for the second quarter of 2017.  (*See* Ex. F (Pacific College's pass rate on the NCLEX-PN for the last quarter of 2016 and first three quarters of 2017.)  And the most recent available data on NCLEX-PN pass rates shows that Pacific College's total average pass rate is 80.3% -- nearly ten (10) percentage points higher than the State's average during this same time period. *Compare* Ex. F (Pacific College's pass rates) *with* Ex. G (correspondence from the BVNPT detailing the State's average pass rate for the last quarter of 2016 and the first three quarters of 2017.)

If Pacific College was merely shuffling students through its VN Program with no regard to training and educating them, the students would not be passing the state licensing exam, much less at a rate that exceeds the State average.  The College's State Licensing Exam passage rate establishes that the College is training its students to be exemplary and qualified vocational nurses.

**B.     Maintenance of Grades at Pacific College**

Students' final theory grades for each VN Program Term are calculated using an excel spreadsheet with formulas corresponding to the weighted criteria that make-up students' final grades and detailed above in Section I.A.  Pacific College employee Kevin Hopkins is the only employee with unfettered access to the student grade spreadsheet and the only employee with permission to enter student scores onto the spreadsheet.  Pacific College expressly delegated this responsibility to a single employee to ensure that student grades are not altered or inflated, but calculated according to the criteria set forth in the VN Student Handbook and approved by the BVNPT.

How each criterion that make-up students' final theory grades are scored/graded are detailed as follows:

**1.     Tests**

In the summer of 2015, Pacific College began using only scantron, multiple choice tests in the VN Program.  Tests are administered in the classroom by VN theory instructors.  At the conclusion of each test, the VN instructor administering the test is responsible for running each student's scantron through a scantron machine in the classroom.  The machine scores each scantron and prints the score on the scantron.  The instructor is then required to turn in the students' scored scantrons to Mr. Hopkins.  Mr. Hopkins then records the test scores in the grade excel spreadsheet he maintains.

**2.     Projects**

VN instructors are responsible for assigning students individual projects and grading the completed projects.  The VN Student Handbook provides VN instructors with a grading rubric that they *may* use to grade the students' projects, but ultimately the instructors are to use their discretion in grading the projects.  Per the VN Student Handbook, "[i]nstructor[s] must ensure



SPERTUS

LANDES &

UMHOFER
LLP

that there is . . . realistic preparation time for these projects." (VN Student Handbook (Ex. B) at p. 38.) Once the instructors have graded the projects, they submit their project grades to Mr. Hopkins who then enters the grades into the excel spreadsheet he maintains.

During Term 5 of the VN Program, students' assigned project is completing the ATI Capstone Course.[6] (VN Student Handbook (Ex. B) at p. 38.) The course is administered online and ATI tracks whether a student has completed the course. At the end of Term 5, Mr. Hopkins receives information from ATI as to whether students completed the course. He then records the information in the grade spreadsheet he maintains.

### 3.    Online Assignments

During each term of the VN Program, students are also required to complete a certain number of online assignments by reviewing and completing certain ATI online tutorials and assessments. (*See* VN Student Handbook (Ex. B) at p. 38.) ATI scores each assignment. Students must receive a score of at least 85% from ATI on each assignment to receive credit from Pacific College for completing the assignment. Students may review the online tutorials and retake the assessments as many times as they need until they achieve a score of 85%. At the end of each term, Mr. Hopkins receives information directly from ATI regarding the number of assignments each student successfully completed with a score of 85% or above (e.g., 9/10 or 7/10). He then inputs the score into the excel grade spreadsheet that he maintains.

### 4.    Content Mastery Assessment

Students' Content Mastery Assessment is derived from their score on an online ATI test administered at the end of each term. (*See* VN Student Handbook (Ex. B) at p. 39.) ATI scores the test and provides students with a **raw score.** Mr. Hopkins then reviews each student's raw score and converts it to a **percentage grade** using the conversion chart that ATI provides to Pacific College. (A copy of the ATI conversion chart is attached to the Compendium of Exhibits as Exhibit H.) The percentage grade reflects the percentage chance that the student will pass the NCLEX-PN. For example, a student who receives a raw score of 72.0% on an ATI end of term test would receive a grade of 92% per ATI conversion's table. *See* Ex. H (ATI conversion table). This grade reflects that the student has a 92% chance or 92% likelihood of passing the NCLEX-PN.

Pacific College is informed and believes that it is this conversion of raw test scores to grades, which ATI authorizes and recommends, that the Plaintiffs in the Civil Matter refer to as grade "inflation." However, there is nothing unlawful or inflated about the conversion process and it is expressly authorized by ATI.

---

[6] As discussed above, the Capstone Course prepares students to take and pass the NCLEX-PN.



SPERTUS
LANDES &
UMHOFER
LLP

Page 8 of 22

**C.**   **Satisfactory Academic Progress ("SAP"), Student Eligibility For Financial Aid, and The Difference Between SAP and Pacific College's Internal Policies Regarding Academic Progression**

Students in Pacific College's VN Program are expected not only to pass their courses so they are prepared for the NCLEX-PN and their future careers, but also so that they remain eligible to receive federal financial aid funds to pay for the cost of their tuition at Pacific College. Pursuant to federal regulations, students must show and Pacific College must monitor students' academic progress. *See* 34 C.F.R. § 668.34 (requiring educational institutions eligible to distribute federal financial aid monies to students to establish a policy and monitor students' academic progress in institutions' programs).

Students receiving less than 75% in the VN program will be placed on academic probation and receive a Financial Aid Warning. A student can still be eligible to receive financial aid while on probation and warning. The student must show academic progress and receive a passing grade in order to continue receiving financial aid in successive terms. (A student cannot have a grade lower than 75% in two successive terms and still receive financial aid). This is consistent with Section 668.34(a)(8) of Title 34 of the Code of Federal Regulations, which expressly provides:

> If the institution places students on financial aid warning, or on financial aid probation, as defined in paragraph (b) of this section . . . <u>A student on financial aid warning may continue to receive assistance under the title IV, HEA programs for one payment period despite a determination that the student is not making satisfactory academic progress.</u>

(34 C.F.R. § 668.34(a)(8)(i) (emphasis added).)

At Pacific College, a VN Program student who does not show SAP in a given term receives a Financial Aid Warning for the next term. (Student Catalog (Ex. A) at p. 24.) "During the warning periods, students . . . [are] placed on the SAP Academic Plan which is defined by the College." (*Id.*) This is a separate and distinct status and plan than academic probation. (*See* VN Student Handbook (Ex. B) at p. 42 (providing that College may allow student to advance to next term if student receives grade between 70% and 74.99% provided that the student is placed on academic probation).) Plaintiffs in the Civil Matter do not appear to appreciate or understand this distinction and also conflate SAP with Pacific College's internal policies that: (1) VN Program students receive no less than a 75% final grade in order to progress to the next term, and (2) that Pacific College retains the discretion to allow students to advance to the next term when they receive a final between 70% and 74.99% provided that they are placed on academic probation in the next term.

**D.**   **Case Study: Review of Sarah Wilkinson's 7/14/15 Student Cohort's Grades**

To better understand how Pacific College's policies regarding SAP and academic progression and advancement interact, consider the grades plaintiff Sarah Wilkinson's 7/14/15

SPERTUS

LANDES &

UMHOFER
LLP

Page 9 of 22

cohort group of students received over their 5 Terms in the VN Program.[7]  The students' grades
for each Term are detailed in the chart below.  The students who were placed on academic
probation during the course of the program and/or received a financial aid warning have been
highlighted in yellow and each of their circumstances and progress through the VN Program are
further discussed below.

**Final Grades for Sarah Wilkinson's 7/14/15 Cohort**

| Student ID | Term 1 | Term 2 | Term 3 | Term 4 | Term 5 | Repeat Term 5 | Exit Exam | Repeat Exit Exam |
|---|---|---|---|---|---|---|---|---|
| 7718 | 76.93% | **70.09%** | 81.02% | 75.00% | **70.28%** | 75.00% | **81** | 87 |
| 7706 | 82.26% | **73.34%** | 76.17% | 74.96% | 75.26% | | **49** | **84** |
| 7713 | 85.20% | 83.83% | 84.88% | 83.61% | 84.19% | | 93 | |
| 7709 | 82.04% | 80.22% | 87.99% | 82.44% | 76.61% | | 96 | |
| 7740 | 82.97% | 81.26% | 82.54% | 80.45% | 75.75% | | 94 | |
| 7725 | 78.14% | **73.55%** | 76.70% | **70.00%** | **65.24%** | 75.00% | **57** | **65** |
| 7691 | 76.20% | 78.16% | 82.45% | **69.29%** | **65.95%** | 76.00% | **65** | 89 |
| 7724 | 78.76% | 79.37% | 79.88% | 73.28% | 76.57% | | 81 | 95 |
| 7717 | 81.05% | 76.50% | 81.58% | 83.35% | 80.07% | | 91 | |
| 7707 | 82.60% | 81.45% | 85.86% | 84.33% | 78.92% | | 91 | |
| 7705 | 86.01% | 83.60% | 88.33% | 86.64% | 86.64% | | 95 | |
| 7729 | 82.89% | 79.35% | 78.45% | 80.19% | 77.42% | | 85 | |

---

[7] Pacific College refers to a class of students based on their start date in the College's
VN Program.  Thus the 7/14/15 cohort group which Sarah Wilkinson taught began their course
of study in the College's VN Program on July 14, 2015 and is referred to as the 7/14/15 cohort.



SPERTUS

LANDES &

UMHOFER
LLP

### 1.    Student 7718

This student did not achieve a passing final grade of at least 75% in Term 2.  However, the student was permitted to progress to Term 3 after being placed on academic probation.  The student then obtained a final grade of 81.02% during Term 3 and academic probation was lifted.

At the conclusion of Term 5, the student did not receive a passing final grade.  Pacific College required this student (and two others discussed below – Students 7725 and 7691) to repeat this Term, but provided the instruction to the students *at no additional cost*.  Further, because the student had been enrolled at the College's Cedars-Sinai satellite campus, which did not have any other cohorts proceeding through the VN Program at that time, Pacific College arranged for a VN instructor to provide these three students with specialized instruction on Term 5 curriculum.  (In contrast, when a student enrolled at the College's main campus in Costa Mesa is required to repeat a Term, the student is typically able to complete that term with another cohort group who is already enrolled at the College.  With respect to this cohort group of students, Pacific College went above and beyond to arrange for specialized instruction, at a location most convenient to the students, at no additional charge to them, so they could successfully complete the VN Program and sit for the College's exit exam.)

After completing Term 5, this student went on to take Pacific College's exit exam, which is a multiple choice exam administered by ATI.  Students must receive a score of no less than 85 to pass the exit exam.  (VN Student Handbook (Ex. B) at p. 52.)  A student who receives a score below 85 is deemed to have failed the College's exit exam, but may retake the exit exam *once*.  (VN Student Handbook (Ex. B) at p. 52.)

This student subsequently retook the exit exam and achieved a score of 87.  The student was deemed to have conditionally passed the exam and was required to submit review notes on all deficient topics identified by the exit exam result to the VN Program Director or complete a four hour focused review and notify the VN Program Director upon completion of the review.  (VN Student Handbook (Ex. B) at p. 52.)  The student was then permitted to graduate from the College's VN Program.

At all times while enrolled at Pacific College, this student showed SAP such that the student was always eligible to receive federal financial aid money to pay the cost of tuition.  This is because each Term, the student's final grade was above 70%.

### 2.    Student 7706

This student did not achieve a passing final grade of at least 75% in Term 2.  However, the student was permitted to progress to Term 3 after being placed on academic probation.  The student then obtained a final grade of 76.17% during Term 3 and academic probation was lifted.  The student passed Term 4 (the student's Term 4 final grade of 74.96% was rounded up to 75%) and Term 5; however, went on to fail Pacific College's exit exam.  The student attempted the exit exam again, but did not pass.  As such, the student did not graduate from Pacific College's VN Program.



SPERTUS

LANDES &

UMHOFER
LLP

Page 11 of 22

### 3.   Student 7725

This student did not achieve a passing final grade of at least 75% in Term 2.  However, the student was permitted to progress to Term 3 after being placed on academic probation.  The student then obtained a final grade of 76.70% during Term 3 and academic probation was lifted.

This student was then placed back on academic probation at the end of Term 4 after obtaining a final grade of only 70%.  After being placed on academic probation, the student was permitted to progress to Term 5.  However, the student's final grade in Term 5 was 65.24%.  The student was thus required to repeat Term 5.  As with student 7718, this student's repetition of Term 5 was provided at no additional cost.

During Terms 1 through 5, this student showed SAP such that the student was always eligible to receive federal financial aid money to pay the cost of tuition.  Had the student required federal financial aid to repeat Term 5, the student would have received a Financial Aid Warning because the student's final grade in Term 5 was below 70% (specifically, it was 65.24%).  However, Pacific College allowed the student to retake Term 5 at no cost, so the student's financial aid eligibility was a non-issue.

The student received a final grade of 75% after repeating Term 5 and was then able to sit for the College's exit exam.  Unfortunately, this student failed the exit exam twice and was not able to graduate from Pacific College's VN Program.

### 4.   Student 7691

This student was on academic probation at the end of Term 4 after obtaining a final grade of only 69.29%.  After being placed on academic probation, the student was permitted to progress to Term 5.  However, the student's final grade in Term 5 was 65.95%.  The student was thus required to repeat Term 5.  As with students 7718 and 7725, this student's repetition of Term 5 was provided at no additional cost.

This student received a final grade of 76% and was then permitted to sit for the College's exit exam.  The student initially failed the exit exam, obtaining a score of only 65.  The student then retook the exam and received a conditionally passing score of 89, allowing the student to graduate after completing remediation.  (*See* VN Student Handbook (Ex. B) at p. 52.)

This student received a Financial Aid Warning at the end of Term 4, as the student's final grade in Term 4 was below 70%.  The student also received a final grade below 70% in Term 5 and thus lost eligibility to receive federal financial aid at that time.  However, the student did not require any further federal financial aid at that time because Pacific College allowed the student to repeat Term 5 at no additional cost.



SPERTUS

LANDES &

UMHOFER

LLP

Page 12 of 22

### 5.    Student 7724

This student did not achieve a passing final grade of at least 75% in Term 4.  However, the student was permitted to progress to Term 5 after being placed on academic probation.  The student then obtained a final grade of 76.57% during Term 5 and academic probation was lifted. The student initially failed the College's exit exam, after earning a score of only 81.  The student, however, went on to retake the exam and obtain a conditionally passing score of 89, allowing the student to graduate from the VN Program.

At all times while enrolled at Pacific College, this student showed SAP such that the student was always eligible to receive federal financial aid money to pay the cost of tuition. This is because each Term, the student's final grade was above 70%.

## II.    Alleged Lowering of Admissions Criteria

Pacific College's admissions policy and entry requirements are laid out in writing in the College's VN Student Handbook.  (VN Student Handbook (Ex. B) at pp. 20-21.)  To be eligible for admission into the College's VN Program, prospective students must: (1) have received a high school diploma or GED, or provide evidence of other documentation showing completion of a general education course of study through the 12th grade or the equivalent thereof; (2) submit to a criminal background check; (3) complete an application for admission; (4) sign an enrollment agreement; (5) accept a financial aid plan, if the student is eligible for and wishes to receive financial aid; and (6) pass Pacific College's admissions test.

Admissions criteria is determined by each individual school and many major universities have eliminated the admissions test requirement.  If a college chooses to administer an admission exam, it is free to choose any test and set their own admission's score requirement. Pacific College uses the admissions test to assess whether the student has the ability to succeed in the program.  If a student provides proof of having successfully completed a post-secondary class, this is also accepted as proof of student's ability to succeed.

In the Civil Matter, the plaintiffs allege that Pacific College accepted students into the VN Program who had a reading level below that of 10th grade and as low as 4th grade in one instance.  (Civil Matter Complaint, ¶ 13(8).)  The plaintiffs also allege that the College wrongfully admitted students with driving under the influence (DUI) convictions on their records and allowed students who were convicted of driving under the influence while enrolled in the VN Program to remain in Program.  (Civil Matter Complaint, ¶ 13(9).)  In their Complaint, the plaintiffs do not identify the students by name, nor have they disclosed the identity of these students to the College in discovery in the pending Civil Matter.  Each of these allegations is addressed below in turn.



SPERTUS

LANDES &

UMHOFER
LLP

Page 13 of 22

**A.    Pacific College's Electronic Admissions Test Is Scored By Third-Party Vendors**

Pacific College administers the Test for Adult Basic Education (TABE) to applicants as an admissions test.  The TABE is provided by third-party McGraw Hill and is a widely-used admissions test among schools that offer occupational certificates or Associate's degrees.[8]  The test is web-based and administered electronically to prospective students, with a College employee who does <u>not</u> work in the College's Admissions Department overseeing the test-taker(s).  **The test is then scored electronically by McGraw Hill.**  Applicants are provided with 90 minutes to complete all sections of the test.

The BVNPT does not mandate that Pacific College or other nursing colleges administer the TABE as an admission test.  Rather, the BVNPT allows institutions to use discretion in setting minimum standards to be used in admissions as to acceptable reading levels and language aptitudes.

Pacific College requires applicants that have not taken a comparable placement test at another college within the last six months to take the TABE and receive a minimum total battery grade equivalent of 10 on the test.  (VN Student Handbook (Ex. B) at p. 20.)  Applicants who do not pass the TABE initially are permitted to retake the test once.  (*Id.*)  The BVNPT has reviewed and approved Pacific College's policies regarding admissions testing and entry requirements (as they are set forth in the VN Student Handbook).  (*Id.*)

Pacific College is not aware of any students who have been admitted to the College with a total battery grade equivalent under 10 on the TABE (or the TEAS, during the time period Pacific College used that test as its admissions exam).  If the United States Attorneys' Office is able to provide the College with names of particular students it has concerns about, Pacific College will review those students' files and admissions test scores and be ready and willing to discuss those students.

**B.    Pacific College Has Admitted Students with DUI Convictions To Its VN Program, and There Was Nothing Unlawful or Wrongful In Doing So**

All applicants to Pacific College's VN Program must undergo a background check.  "Any infraction appearing in the background check . . . [must] be reviewed and evaluated by the

---

[8] Pacific College began using the TABE in August, 2016.  Before using the TABE as its admissions test, Pacific College used the Test of Essential Academic Skills (TEAS) offered by ATI Higher Education.  Like the TABE, the test was web-based and administered electronically to prospective students, with a College employee who did not work in the College's Admissions Department overseeing the test-takers.  The test was then scored electronically by ATI Higher Education.



SPERTUS
LANDES &
UMHOFER
LLP

VN Program Director." (VN Student Handbook (Ex. B) at p. 21.) This includes DUI convictions that may appear on an applicant's record.

When an applicant's background check reveals a DUI conviction, Pacific College counsels the student verbally and in writing about the impact such a conviction may have on the students' ability to obtain a VN license from the State of California in the future and ultimately a VN job. (The letter of advisement form that Pacific College utilizes to document the counseling it provides to students and applicants with misdemeanors or felony convictions is attached to the Compendium of Exhibits as Exhibit I.)

Pacific College's VN Student Handbook also requires that students already enrolled in the VN Program disclose any infraction, including a DUI conviction, to the VN Program Director immediately. (VN Student Handbook (Ex. B) at p. 21 ("It is the student's responsibility to notify the Director of Nursing if any infractions . . . [which occur] during the program.") The same verbal and written counseling is then administered to the student. (*Id.*)

Pacific College does not dispute that it has admitted students to its VN Program who have prior DUI convictions.[9] It has also allowed students enrolled in its VN Program who are convicted of driving under the influence during the Program to remain enrolled. Much like law schools and other higher education institutions, the College recognizes that individuals make mistakes, including driving under the influence. Pacific College believes that such mistakes should not preclude individuals from seeking education to better themselves and work as licensed vocational nurses. There is nothing unlawful about Pacific College's practices or policy in this regard.

If the United States Attorneys' Office is able to provide the College with names of particular students it has concerns about, Pacific College will review those students' files and is willing to further discuss those students' background checks and admission to the College.

---

[9] In February, 2017, Pacific College's Director of Nursing, Carmencita Recto, determined that Pacific College would no longer accept applicants into the VN Program with prior DUI convictions. This was because Pacific College regularly sends students to St. Francis Hospital in Lynwood, California and Community Hospital in San Bernardino, California to complete their clinical rotations in obstetrics and pediatrics. Both hospitals provide acute care and will not allow students with prior DUI convictions to work in their hospitals. In the past, when students with prior DUI convictions were not able to work at either Hospital, Pacific College secured an alternative clinical placement for the students at a different clinical location with less stringent background check requirements. However, this process was burdensome for the College and thus Ms. Recto made the decision that the College would longer accept students with prior DUI convictions into the VN Program.

S P E R T U S

LANDES &

UMHOFER
LLP

### III.   The Alleged Falsification of Attendance Records

Pacific College is not aware of any falsification of attendance records by Pacific College students, faculty, or employees.  Currently, Pacific College requires students to complete 646 hours of theory coursework and 1,022 clinical hours to complete the VN Program.[10]  (VN Student Handbook (Ex. B) at p. 53.)  As provided in the VN Student Handbook, any student who forges, alters or knowingly provides false information with respect to students' attendance will be subject to discipline.  (VN Student Handbook (Ex. B) at p. 30.)

An overview of how Pacific College tracks student attendance in the VN Program is provided below.  If the United States Attorneys' Office is able to provide the College with names of particular students it has concerns about, Pacific College will review those students' files and attendance records and be ready and willing to further discuss those students.

#### A.   Theory Attendance Records

Students' attendance at their weekly theory courses is recorded by the VN instructor teaching the course.  After completing an attendance list or roster, the instructor submits the list via email, photograph, or text message to Pacific College's Registrar, Annie Tran.  Ms. Tran is responsible for tracking students' attendance and progress in the VN Program, as well as students' completion of make-up hours, as detailed below in Section IV(C).

#### B.   Clinical Attendance Records

Students are supervised by qualified VN instructors at all times during their clinical rotations.  (Pacific College Catalog (Ex. A) at p. 58.)  Students are expected to arrive at their assigned clinical rotation on-time and sign-in with the VN instructor present at the site.  (VN Student handbook (Ex. B) at p.  44 ("students are expected to attend ALL theory and clinical instructions, to arrive on time to class or the designated clinical facility, and to stay throughout the duration of theory or clinical instruction.").)  The instructor later submits his/her attendance sheet to Ms. Tran, who tracks students' attendance and any clinical assignments that students have missed and need to make-up.

#### C.   Make-Up Procedures

"A student who has theory absences must make-up the missed hours by submitting a written assignment as determined by the theory instructor."  (VN Student Handbook (Ex. B) at p. 45.)  Similarly, a "student who has [a] clinical absence is required to make-up [the hours] at a designated clinical environment (skills labs, resource center, or clinical setting) under the

---

[10] Prior versions of the VN Program required students to complete only 578 hours of theory coursework and 964 clinical hours to graduate from the Program (*see* VN Student Handbook 2014-2015 (Ex. C at p. 54.); however, Pacific College has since raised the bar.



supervision of a clinical instructor." (VN Student Handbook (Ex. B) at p. 46.) The VN Program Director or designated personnel must approve all clinical make-up assignments. (*Id.*)

While generally students must complete the requisite theory and clinical hours and assignments in a given Term before advancing to the next Term, the VN Program Director may in her discretion grant students additional time to make up hours. (VN Student Handbook (Ex. B) at p. 44.) This policy and the VN Program Director's discretion to grant students additional time was expressly approved by the BVNPT.

Below are graphic representations, included in the VN Student Handbook (*see* Ex. B at p. 46), detailing the process Pacific College adheres to when students need to make-up theory coursework or clinical hours.

**Theory Make-Up**



**Clinical Make-Up**

### D.     Attendance Warning Notices

Both the Registrar and VN Program Director monitor students' attendance and completion of theory and clinical hours closely. If a student has more than three (3) days of theory absences or more than three (3) days of clinical absences in a given Term, the student receives an Attendance Warning Notice essentially placing the student on attendance probation. (VN Student Handbook (Ex. B) at p. 44.) If a student has received an Attendance Warning Notice and fails to make-up his/her missed hours within the Term, the student may be subject to dismissal from the VN Program. (*Id.*)



SPERTUS
LANDES &
UMHOFER
LLP

Page 17 of 22

    Pacific College does not tolerate excessive absenteeism.  It recognizes that its students must be present in the classroom and at designated clinical rotations in order to learn and fully absorb the College's curriculum.  Indeed, the VN Student Handbook expressly provides that "[a] student who has not completed the prescribed hours shall not be allowed to graduate."  (VN Student Handbook (Ex. B) at p. 44.)

## IV.    Alleged Manipulation of Financial Aid Refund Checks

    Pacific College is not aware of any manipulation of financial aid refund checks by Pacific College employees, students, or faculty.

### A.    Pacific College's Refund Policies

    Pacific College's refund policies are set forth in Pacific College's 2016-2017 Catalog. (Catalog (Ex. A) at pp. 27-28.)  Generally, all tuition and fees paid for enrollment are deemed to have been paid for educational instruction, unless the payment is for a specific charge for equipment set forth in the agreement of the program that the students signed.  (*Id.* at p. 27.)  The refund does not apply to fees identified as "non-refundable."  (*Id.*)  Pacific College issues refund checks within 45 days of the date of the student's withdrawal.  (*Id.*)  Students who are considering withdrawing from enrollment are encouraged to contact their Academic and Financial Aid advisors for guidance.  (*Id.*)  The advisors will meet with students to help them understand the financial ramifications associated with the withdrawal.  (*Id.* at pp. 27-28.)

    Pacific College's refund policies can be further divided into two categories: (1) refunds before matriculation, and (2) refunds after matriculation.  (*Id.* at p. 27.)  For refunds before matriculation, the College provides a full refund of all payments to applicants who are not accepted for enrollment at the College, or to a student who cancels his or her enrollment before the first day of classes.  (*Id.*)  For refunds after matriculation, students may cancel enrollment without any financial obligation by the end of the seventh business day after classes commence.  (*Id.*)  The student must make the cancellation in writing and submit it to the President of the College.  (*Id.*)  For purposes of calculating a student's refund, the student's last date of attendance is considered the date of withdrawal.  (*Id.*)

    If a student receives Title IV financial aid funds, "a calculation of the 'Return of Title IV Aid' must be performed to determine the allowable earned amount of federal funds applied towards educational costs."  (*Id.* at p. 26.)  Students who withdraw from all classes may owe funds to the College due to a mandated return of Title IV loan funds the College must make to the federal government.  (*Id.*)  The Financial Aid Office notifies and provides instructions to students who are required to return loan funds to the government.  (*Id.*)  Any loan funds returned to the Title IV aid program reduces the amount that a student originally borrowed for the term.  (*Id.*)  Financial aid funds returned must be distributed in the following order:

    1.    Federal Direct Loan Stafford Unsubsidized

    2.    Federal Direct Loan Stafford Subsidized



SPERTUS

LANDES &

UMHOFER

LLP

      3.     Federal Direct PLUS (Parent Loan)

      4.     Federal PELL Grant

(*Id.*)

### B.    Student Credit Balances

Pacific College recently conducted an internal audit of the College's student credit balances for all students enrolled in the College from May 2013 through January 2018. The internal audit revealed surplus Financial Aid funds totaling $10,264.90 were owed to nine students (of approximately 771 students). Pacific College has sent each student (or the DOE, for students currently enrolled) a full refund of the amounts owed to them.

The internal audit also revealed that six students may be entitled to refunds based on a private loan received from a third party. These private loan-related refunds are not a result of surplus Financial Aid. The College is currently requesting the students' contracts from the third-party lenders to determine if these students are entitled to a refund check, and the amounts owed. The College currently estimates that the total amount owed to these students is less than $10,000; nevertheless, it fully intends to promptly make payment to these students once the final amounts owed are determined.

If the United States Attorneys' Office provides the College with names of particular students it has concerns about, Pacific College will review those students' files, determine whether he or she is owed any refund, and will be prepared to further discuss these issues with the government and promptly provide those students (or the DOE) with any moneys owed.

### V.    Several Other Government Agencies Have Thoroughly Investigated and Vetted Pacific College's VN Program and Practices and Procedures

Prior to the FBI's execution of a search warrant on Pacific College and prior to the initiation of the Civil Matter, Pacific College was investigated and audited by several government entities. As discussed further below, each entity conducted a full investigation at Pacific College and concluded their investigations with findings that Pacific College was <u>not</u> engaged in any wrongdoing. While the College is far from perfect and recognizes that its employees have made minor administrative and technical errors, as at any large institution or College, neither Pacific College, nor its administration, is engaged in a conspiracy to defraud its students or the federal government.

### A.    Bureau for Private Post-Secondary Education

On November 17, 2014, the BPPE received a complaint from an anonymous Pacific College student alleging that College had disseminated fraudulent information to its students, fraudulently advanced students, and had a substandard facility and substandard equipment. (A



SPERTUS

LANDES &

UMHOFER
LLP

Page 19 of 22

copy of BBPE's March 11, 2016 correspondence to Pacific College regarding the complaint it received is attached to the accompanying Compendium of Exhibit as Exhibit J.)

After investigating the complaint, including interviewing Pacific College administration and reviewing student files, the BPPE notified the College that it "did not identify or establish that a violation of the Bureau's laws or regulations occurred and has, therefore, closed this matter." (Ex. J (March 11, 2016 correspondence from BPPE.))

## B.   The Board of Vocational Nursing and Psychiatric Technicians

Around this same time, on or about December 18, 2015, a student submitted a formal complaint to the California Department of Industrial Relations, Division of Occupational Safety and Health which was forwarded to the BVNPT for review and investigation. (A copy of the student's complaint is attached as Exhibit K.)  The student's complaint included allegations that:

- Students who failed classes/terms were permitted to continue in the VN Program and progress to the next term;

- Classes were being taught without prior BVNPT approval;

- Class schedules were not prepared or distributed in a timely manner;

- The College was not complying with its own admissions requirements, previously approved by the BVNPT;

- Student make-up assignments were not relevant to what students were studying;

- Make-up hours were carried over from term to term; and,

- There was high turnover amongst administration in the Program.

On or about February 11, 2016, in response to the student complaint, the BVNPT required the College to provide it with significant documentation regarding the College's practices and procedures. (A copy of the BVNPT's February 26, 2016 correspondence to Pacific College is attached to the accompanying Compendium of Exhibits as Exhibit L.)  Pacific College provided the BVNPT with all of the information and documentation it requested.  On May 10, 2016, the BVNPT found the College to be in good standing, and the College was approved to have three (3) new student cohorts begin study and enrollment in the College's VN Program.  (A copy of the BVNPT's May 20, 2016 correspondence to Pacific College is attached to the accompanying Compendium of Exhibits as Exhibit M.)  The College continues to be in good standing with the BVNPT as indicated by the letter dated March 24, 2017.  (A copy of the BVNPT's May 24, 2017 correspondence to Pacific College is attached to the accompanying Compendium of Exhibits as Exhibit N.)  That letter provides: "Currently, the program is in compliance with all approval standards in Article 4 of the Vocational Nursing Practice Act,



commencing at Business and Professions Code Section 2880, and Article 5 of the Board's Regulations, commencing at California Code of Regulations, Title 16, Section 2526." (*Id.*)

### C.    The United States Department of Education

Next, on or about June 3, 2016, Pacific College learned that the DOE's Institutional Review Oversight Specialist Group from Kansas City would be visiting the College to review its policies and procedures, as well as audit student financial aid files. (A copy of the DOE's June 3, 2016 correspondence to the College is attached to the accompanying Compendium of Exhibits as Exhibit O.) In preparation for the DOE's visit and per its request, Pacific College provided the Institutional Oversight Specialist Group and the DOE with its policies and procedures for: administering federal financial aid to College students; monitoring students' satisfactory academic progress (SAP); monitoring and tracking student attendance; enrollment reporting; withdrawal and return of federal financial aid funds; certification of student eligibility for federal financial aid; all forms the College used in administering federal financial aid; and monthly reconciliations between the College's federal financial aid account (known as a G5 account), the College's general operating account, and student accounts and ledgers. (Ex. O.) On July 14, 2016, the DOE visited Pacific College's main campus in Costa Mesa and had the opportunity to review additional student files and financial aid documentation. To Pacific College's knowledge, the DOE made no findings of wrongdoing during its visit.

Following the visit, Pacific College was permitted to operate as it had been and was permitted to continue administering federal financial aid to its students without heightened oversight from the DOE.[11] On January 11, 2018, the DOE notified the College that it had completed its independent investigation into the issues you are investigating and had found no wrongdoing. The DOE investigation began 18 months ago, and involved a complete audit of the College's Bank of America accounts, along with a review of 300 student files.

### VI.    CONCLUSION

Pacific College is confident that the government's investigation will ultimately conclude with no findings of wrongdoing, but Pacific College is likely to fail unless seized operating funds are released in the near future. In furtherance of the goal of allowing the College to continue operations by releasing seized funds pending the outcome of the investigation, all

---

[11] In or about August, 2017, the DOE placed the College on Heightened Cash Monitoring Status 1 ("HCM 1 Status") due to a dip in the College's available cash. (This dip was due to the College's decision to enter into confidential pre-litigation settlements with two employees alleging retaliation.) The College's HCM 1 Status, however, did not preclude the College from continuing to administer federal financial aid monies to its students or operate the VN Program. In or around October, 2017, the College was placed on HCM 2 Status because of the FBI's pending investigation into the College, not because of any independent concerns the DOE had regarding the College's administration of federal financial aid funds.



SPERTUS

LANDES &

UMHOFER
LLP

Page 21 of 22

counsel pledge full cooperation with your investigation and will answer any specific questions promptly.  We look forward to working with you to resolve all issues, so please do not hesitate to ask any questions you may have.

Sincerely,

James W. Spertus
For all counsel.

SPERTUS
LANDES &
UMHOFER
LLP

## COMPENDIUM OF EXHIBITS

| Exhibit | Description of Exhibit |
|---------|------------------------|
| A | Pacific College's 2016-2017 Catalog |
| B | Pacific College's 2017-2018 Vocational Nursing Student Handbook |
| C | Pacific College's 2014-2015 Vocational Nursing Student Handbook |
| D | Blake Austin College's 2017 Vocational Nursing Program Handbook |
| E | March 24, 2017 Correspondence to Pacific College VN Program Director Carmencita Recto |
| F | Pacific College's Average Pass Rate on the NCLEX-PN (last quarter of 2016 and first three quarters of 2017) |
| G | California Average Pass Rate on the NCLEX-PN (last quarter of 2016 and first three quarters of 2017) |
| H | 2017 ATI Conversion Table |
| I | Pacific College's Letter of Advisement to Students with Misdemeanor or Felony Convictions |
| J | March 11, 2016 Correspondence from Bureau for Private Postsecondary Education |
| K | December 18, 2015 Student Complaint to Department of Industrial Relations, Division of Occupational Safety and Health |
| L | February 26, 2016 Correspondence from BVNPT to Pacific College |
| M | May 20, 2016 Email Correspondence from BVNPT to Pacific College |
| N | June 3, 2016 Correspondence from Department of Education to Pacific College |

# EXHIBIT 6

EXHIBIT 6



**SPERTUS**

**LANDES** &

**UMHOFER**
LLP

<u>VIA EMAIL AND COURIER</u>

January 28, 2018

Mr. Frank D. Kortum
Assistant United States Attorney
312 North Spring Street, Suite 1400
Los Angeles, CA 90012-2748

     Re:    <u>Pacific College / FBI Investigation</u>

Dear Mr. Kortum,

    Thank you for meeting with us on Friday, January 19, 2018, to discuss the government's investigation of this case. In follow up to that discussion, Terree Bowers, Eliot Krieger, Tom Brown, Andrea Oxman, and I write on behalf of our clients to provide you with the additional financial information you have requested. The chart below includes: (1) the only unseized account still held by Pacific College, which is used to pay the costs of Pacific College's campus building, and (2) the personal and retirement accounts for William Nelson and Donna Woo, both of whom have drawn down their own personal savings substantially since the seizure in October, 2017 to meet the college's daily operating expenses. Pacific College has a minimum monthly operating budget of $400,000. As you will see from the accounts below, Mr. Nelson and Ms. Woo can no longer afford to use personal savings to keep the college afloat.

| Account | October 2017 Balance | Current Balance / Retirement |
|---|---|---|
| **Pacific College** | | |
| Pacific College Bank of America Business Investment Account, | $116,000 | $28,616 |
| **William and Ila Nelson** | | |
| William Nelson, Met Life/Computershare Investor Services, | $12,000 | $12,000 |
| William Nelson, Fidelity Brokerage Services, | $ 880,000 | Closed |
| William Nelson, Fidelity Brokerage Services, | $ 10,000 | Closed |
| **Donna and William Woo** | | |
| William O. Woo Jr/Donna Woo, Bank of America Certificate of Deposit, | $160,000 | $1,123 |

James W. Spertus | jim@spertuslaw.com    Matthew Umhofer | matthew@spertuslaw.com    Ezra D. Landes | ezra@spertuslaw.com
Samuel A. Josephs | samuel@spertuslaw.com    Jennifer E. LaGrange | jennifer@spertuslaw.com    Dolly K. Hansen | dolly@spertuslaw.com
Elizabeth J. Lee | elizabeth@spertuslaw.com    John Hanusz | john@spertuslaw.com    J. Anthony King | anthony@spertuslaw.com
Julia Tuverson | julia@spertuslaw.com    Diane Bang | diane@spertuslaw.com    Suzanne S. Obeda | suzie@spertuslaw.com
Payton Lyon | payton@spertuslaw.com

SPERTUS
LANDES &
UMHOFER
LLP

Page 2 of 2

| Account | October 2017 Balance | Current Balance / Retirement |
|---|---|---|
| Donna Woo/William Woo, Bank of America Rewards Money Market Saving, ▉ | $9,000 | $8,951 |
| Donna Woo/William Woo, Bank of America Rewards Money Market Saving, | $14,000 | $14,000 |
| William Woo Jr./Donna Woo, Bank of America Certificate of Deposit, ▉ | $ 435,000 | $329,866 |
| William Woo/Donna Woo, Fidelity Investments, ▉ | $ 18,000 | Retirement |
| William Woo/Donna Woo, Fidelity Investments, ▉ | $ 5,000 | Retirement |
| Donna Woo, Fidelity Investments, ▉ | $ 38,000 | Retirement |
| Donna Woo/William Woo, Schools First Federal Credit Union, ▉ | $ 474,000 | $ 34,994 |
| Donna Woo/William Woo, Schools First Federal Credit Union, ▉ | $ 109,000 | $ 109,000 |
| Donna Woo/William Woo, Schools First Federal Credit Union, ▉ | $ 9,000 | Retirement |
| Donna Woo/William Woo, Schools First Federal Credit Union, Certificate, ▉ | $ 105,000 | $ 105,000 |
| Donna Woo/William Woo, Schools First Federal Credit Union, Certificate, ▉ | $ 68,000 | $ 65,000 |
| Donna Woo/William Woo, Schools First Federal Credit Union, Certificate, ▉ | $ 406,000 | $ 406,000 |

As you can see, the college will not survive without return of the seized funds. Indeed, the only reason it has survived the past four months at all is due to Mr. Nelson and Ms. Woo's decades-long love for the college and its students. They, however, can no longer afford to maintain $400,000 in overhead out of their own pockets. With the above information in-hand, we hope to reach an agreement to release the seized funds so that the college may continue operating, employees can keep their jobs, current students can realize their educational investments, and future students will not lose out on the educational and career opportunities that Pacific College offers.

Sincerely,

James W. Spertus
For all counsel.

# EXHIBIT 7

EXHIBIT 7

Arent Fox

Arent Fox LLP / **Attorneys at Law**
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

**Confidential**

January 31, 2018

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Martina Fernandez-Rosario
U.S. Department of Education
Federal Student Aid
Program Compliance
San Francisco/Seattle School Participation Division
50 United Nations Plaza, Suite 1273
San Francisco, California 94102
*Email: martina.fernandez-rosario@ed.gov*

**Terree A. Bowers**
Partner
213.443.7573 DIRECT
213.629.7401 FAX
terree.bowers@arentfox.com

Reference No.: 039023.00001

Re:     Pacific College

Dear Ms. Fernandez-Rosario:

I represent Pacific College (the "College"). On behalf of my client, I write to request that the Department of Education (the "DOE") remove the College from the Heightened Cash Monitoring ("HCM") 2 payment method immediately and reinstate its eligibility to receive Title IV funds under the HCM 1 method. As you may be aware, the only reason the College was placed on HCM 2 was because the FBI executed search warrants on the College on or about October 5, 2017 in a pending investigation, not because of any finding of further deficiencies by the College in its administration of Title IV funds.

In short, the sudden and unexpected elevation of the College to HCM 2 status coupled with the FBI's seizure of the entirety of the College's operating funds is proving fatal to the College's ability to continue its operations and to educate students in a highly impacted community. Unless it receives immediate relief from the HCM 2 payment method, the College will fail due to the mere fact that the government is conducting an investigation and the DOE's speculation that the College has engaged in wrongdoing, even though no charges have been brought against the College to date.  This would be severely detrimental, both to the many students enrolled and to the surrounding communities.

By way of background, on August 7, 2017, the DOE notified the College that its audited financial statements yielded a composite score of 1.3, which fell below the minimum score of 1.5 needed for participation in the Advance Payment method. In response, the College elected to

AFDOCS/15953179.1

555 West Fifth Street, 48ᵗʰ Floor
Los Angeles, CA 90013-1065
T 213.629.7400  F 213.629.7401

1675 Broadway
New York, NY 10019-5820
T 212.484.3900  F 212.484.3990

55 Second Street, 21ˢᵗ Floor
San Francisco, CA 94105-3470
T 415.757.5500  F 415.757.5501

1717 K Street, NW
Washington, DC 20006-5344
T 202.857.6000  F 202.857.6395

# Arent Fox

Martina Fernandez-Rosario
US Department of Education
January 31, 2018
Page 2

continue to participate in the Title IV, HEA programs under the HCM 1 payment method, and expressed its determination to improve its composite score and regain eligibility for the Advance Payment method.

On October 10, 2017, merely six weeks after the College was placed on HCM 1 status, the DOE transferred the College to HCM 2 status. The reason provided by the DOE for this decision was that it had "significant concerns regarding Pacific College's administration of Title IV, HEA funds." On December 11, 2017, Marcus Tromp, the College's Senior Vice President of Operations, spoke with Hyun Jhong Yi and Gayle Palumbo in the Federal Student Aid division of the DOE, regarding the reasons for elevating the College to HCM 2 status. Ms. Yi and Ms. Palumbo informed Mr. Tromp that the *only* reason the College was placed on HCM 2 was because the FBI had executed a search warrant on the College.

The College believes that the pending FBI investigation largely concerns the same issues examined by the DOE's Institutional Review Oversight Specialist Group in its recently concluded investigation. The DOE investigation began 18 months ago and involved a complete audit of the College's Bank of America accounts, along with a review of 300 student files. On January 11, 2018, the DOE notified the College that it had completed its investigation and had found no wrongdoing.

Given the favorable result of the DOE investigation, the College is confident that the FBI investigation will similarly conclude with no findings of wrongdoing. The College is actively cooperating with the FBI and the United States Attorney's Office in the pending investigation. However, the College will fail pending the investigation unless the DOE immediately removes the college from the HCM 2 payment method. The unavailability of the College's operating funds due to the FBI seizure, coupled with the delays in receiving reimbursements under the HCM 2 method, has placed the College in a dire financial condition. The College is presently struggling to make payroll and has cut staff salaries across the board in an attempt to continue operations. Despite these measures, the College is quickly running out of time and will be forced to cease operations if immediate relief is not provided. Hundreds of currently enrolled students, many of whom are close to graduation, will suffer tremendous harm if the College is forced to close and they are forced to begin their course of study anew.

Since its founding more than two decades ago, Pacific College has been committed to providing vocational education in underserved communities. Its contribution to these communities has been invaluable. If the College fails due to an investigation into issues already reviewed and closed by the DOE without any finding of wrongdoing, the people who stand to suffer the most will be the students who rely on the College for education and career advancement. As such, the College respectfully requests that the DOE promptly reinstate its eligibility to participate in the Title IV, HEA programs under the HCM 1 payment method.

# Arent Fox

Martina Fernandez-Rosario
US Department of Education
January 31, 2018
Page 3

Should you have any questions, please do not hesitate to contact me. Thank you for your thoughtful consideration.

Sincerely,

*[signature]*

Terree A. Bowers

TAB:GD:gw

cc:   Hyun Jhong Yi
       Email:  hyunjhong.yi@ed.gov

       Gayle Palumbo, Ed.D
       Email:  gayle.palumbo@ed.gov

       Daniel H. Ahn, Esq.
       Email:  daniel.ahn@usdoj.gov

       Adam M. Shanedling
       Email:  adam.shanedling@ed.gov

       Bruno Boggi
       Email:  Bruno.boggi@ed.gov

# EXHIBIT 8

EXHIBIT 8



# SPERTUS
# LANDES &
# UMHOFER
LLP

<u>VIA EMAIL AND U.S. MAIL</u>

February 7, 2018

Mr. Steven R. Welk
Assistant United States Attorney
312 North Spring Street, Suite 1400
Los Angeles, CA 90012-2748

      Re:   <u>Pacific College / FBI Investigation</u>

Dear Mr. Welk,

     I write to follow up on your request for information about how the College has funded operations since its operating account was seized in October.  Here are the details:

| Time Period | Source of Funding |
|---|---|
| October 2017 | Ms. Woo and Mr. Nelson each deposited $350,000 ($700,000 total) from their personal savings into the Pacific College operating account. |
| Late November 2017 | Ms. Woo and Mr. Nelson each deposited an additional $300,000 ($600,000 total) from their personal savings into the Pacific College operating account. |
| January 2018 | Pacific College slashed payroll across the board and some employees took as much as a $30,000 salary cut. |
| January/February 2018 | Mr. Nelson deposited a final $150,000 from his personal savings into the Pacific College operating account to make February 1, 2018 payroll. |
| October 2017 through January 2018 | Ms. Woo has spent $148,665.45 of her own money and on her personal credit cards for Pacific College on routine advertising, gasoline for the school van, and other necessary expenses. |

James W. Spertus  |  jim@spertuslaw.com
Samuel A. Josephs  |  samuel@spertuslaw.com
Elizabeth J. Lee  |  elizabeth@spertuslaw.com
Julia Tuverson  |  julia@spertuslaw.com

Matthew Umhofer  |  matthew@spertuslaw.com
Jennifer E. LaGrange  |  jennifer@spertuslaw.com
John Hanusz  |  john@spertuslaw.com
Diane Bang  |  diane@spertuslaw.com
Payton Lyon  |  payton@spertuslaw.com

Ezra D. Landes  |  ezra@spertuslaw.com
Dolly K. Hansen  |  dolly@spertuslaw.com
J. Anthony King  |  anthony@spertuslaw.com
Suzanne S. Obeda  |  suzie@spertuslaw.com



SPERTUS

LANDES &

UMHOFER
LLP

Page 2 of 2

     Mr. Nelson and Ms. Woo have no more liquid resources to fund operations.  If the government's claims are fully secured by a lien, there should be no reason for the government to refuse to return seized funds.  The government of course is free to investigate whatever it wants, but the College should not fail simply because the government chose to execute seizure warrants on operating accounts before the investigation is completed.  Pacific College has one of the highest certification rates of all nursing school programs in the State of California, and has been one of the most well-regarded programs in California for 30 years.  We sincerely hope that this additional information answers all of your questions, and that $1.5M from the seized operating funds will be returned promptly in exchange for a lien on the College's building.

Sincerely,

James W. Spertus
For All Counsel

Terree Bowers
For Pacific College

# EXHIBIT 9

EXHIBIT 9

On Dec 16, 2017, at 7:18 AM, Jim Spertus <jim@spertuslaw.com> wrote:

Hi Daniel,

Thank you very much for the call yesterday.  I've spoken to Tom and Eliot about dates for a presentation by us to the government on the four issues we discussed, and we all agree that we want to make a presentation, and need to make it as soon as possible.  I have not yet had a chance to confirm dates with Terree, but will January 18th or 19th in the afternoon work for the government?

It is important to us that the forfeiture AUSA and the DOE agent attend because the College is struggling weekly to make payroll and our goal is the to establish factually that the whistleblower complaint is unsustainable all equities support releasing seized funds while the investigation proceeds.

James W. Spertus
Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | jim@spertuslaw.com
http://www.spertuslaw.com/attorney/james-w-spertus/

This message may contain confidential and privileged information.  If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Thank you.

# EXHIBIT 10

EXHIBIT 10

**Terree A. Bowers**
Partner

Arent Fox LLP | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7573 DIRECT | 213.629.7401 FAX
terree.bowers@arentfox.com | www.arentfox.com


**From:** Bowers, Terree
**Sent:** Friday, February 02, 2018 11:45 AM
**To:** 'nicola.hanna@usdoj.gov' <nicola.hanna@usdoj.gov>
**Subject:** Urgent matter
**Importance:** High

Nick,
First of all congratulations!  As you know it is the best job in the world and I know you will do well.
I hate to bother you so early in your tenure, but I represent Pacific College, a nursing college that is about to go under because the government has seized all of its assets.
The college has already been audited several times with no adverse findings.  It appears that the so-called whistle blower for your Office's case has scammed several other colleges.
I have been working with Frank Kortum and he tentatively agreed to a $1.5 million lien on the college's building in order to release funds so that the college could continue to operate.
Unfortunately, Frank's supervisor, Steve Welk, overruled Frank. Steve is a very experienced AUSA, but I'm not sure he appreciates his decision will end the college.  Several people have already taken out personal loans to meet the recent pay roll. Daniel Ahn is the AUSA on the case, but has deferred to Frank on forfeiture issues.
We need an emergency intervention to get this resolved.
Thank you.

**Terree A. Bowers**
Partner

Arent Fox LLP | Attorneys at Law
Gas Company Tower
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
213.443.7573 DIRECT | 213.629.7401 FAX
terree.bowers@arentfox.com | www.arentfox.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

# EXHIBIT 11

EXHIBIT 11

**Elizabeth Lee**

**Subject:**               FW: Urgent matter

**From:** Jim Spertus
**Sent:** Saturday, February 03, 2018 1:54 PM
**To:** 'Ahn, Daniel (USACAC) 1'
**Cc:** 'Bowers, Terree <Terree.Bowers@arentfox.com> (Terree.Bowers@arentfox.com)'; 'Thomas Brown'; Elliot Krieger (ekrieger@sktlawyers.com); Andrea F. Oxman (aoxman@klinedinstlaw.com)
**Subject:** RE: Urgent matter

Daniel,

I need to supplement the email below with an additional fact just learned today.  Ms. Woo has a 30-year banking relationship with Bank of America, and today the bank informed her that it is closing all of her personal accounts and placing them on restricted access in 21-days.  This obviously resulted from subpoenas served by the Office in connection with your investigation.  Although the government obviously  is allowed to serve subpoenas, and a bank obviously is allowed to close accounts for any reason or no reason, this development should frame for you the devastating effect your investigation is having on the lives of your "targets" who I believe we have now affirmatively proved have done nothing that even warrants further investigation.  At a minimum, it should motivate you to move with greater haste to evaluate the affirmative evidence we provided to you in advance of our January 19 meeting.

When Eliot Krieger first reached out to you in the Fall, we believed you had agreed to make a reverse proffer in January so we could learn what facts are of concern to the government.  You subsequently told us that goal was too optimistic, so we requested the opportunity to present facts to you, rather than receive facts from you, with our goal stated to be an effort to speed your investigation and secure the return of seized funds because the College is on the brink of failure as a result of the government's seizure of the entire operating account.  We separately presented financial information to the forfeiture unit to establish conclusively that the College cannot make payroll, and we offered a lien to the government for the amount of the seized funds.  After the government tentatively agreed to this solution, we told the College not to obtain any loan against the building against which the lien would be recorded in an effort to ensure that the government's lien would be in first position.  Then, yesterday, we learned that Steve Welk had disapproved the lien solution, that the College will miss payroll, and that the "targets" of your investigation, who are school administrators, are losing their life-long banking relationships.  All of this is happening against the back drop of a federal agency with a clear conflict of interest conducting this investigation.  We presented you with the evidence on January 19, and separately told you that Brian Chilstrom had threatened the College with an FBI investigation if the College refused his request for employment and equity, and then provided you with emails from ASAC Richard Smith that Smith personally sent to Chilstrom requesting favors.

We believe Chilstrom is you whistleblower, and the fact that this investigation is plodding along so slowing in the face of the dire consequences I communicated to you yesterday and today is hard to understand.  We received no response yesterday to my email below, and we just need to know that the issues raised by us are being reviewed at the highest levels of the Office.  Please let us know.  Thank you.

JAMES W. SPERTUS
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | jim@spertuslaw.com
http://www.spertuslaw.com/attorney/james-w-spertus/

This message may contain confidential and privileged information.  If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.  Thank you.

1

# EXHIBIT 12

EXHIBIT 12

| | |
|---|---|
| **From:** | Jim Spertus |
| **To:** | Welk, Steven (USACAC) |
| **Cc:** | Kortum, Frank (USACAC); Ahn, Daniel (USACAC) 1; Bowers, Terree <Terree.Bowers@arentfox.com> (Terree.Bowers@arentfox.com); Elizabeth Lee; Grace Du (grace.du@arentfox.com); Elliot Krieger; Tom Brown; Andrea F. Oxman |
| **Subject:** | Re: Funding Information |
| **Date:** | Thursday, February 08, 2018 9:24:39 AM |

Yes, your assumption is correct.  We will provide complete transparency and a full accounting whenever asked.  Thank you.

JAMES W. SPERTUS

SPERTUS, LANDES & UMHOFER, LLP

1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025

t: (310) 826-4700 | f: (310) 826-4711 | jim@spertuslaw.com

This message may contain confidential and privileged information.  If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.  Thank you.

On Feb 8, 2018, at 9:21 AM, Welk, Steven (USACAC) <Steven.Welk@usdoj.gov> wrote:

> **Thanks, Jim,**
>
> **I am trying to set up a conference call this afternoon with the relevant government participants.  I will get back to you as soon as I can.**
>
> **In the meantime, should the government decide to grant your request, am I correct in assuming that there will be full transparency concerning the use of the funds, meaning that your client will accept reasonable restrictions on use and provide a full accounting of how the money is spent?**
>
> **SRW**

# EXHIBIT 13

EXHIBIT 13



# United States Department of Justice

## United States Attorney's Office
## Central District of California

*Steven R. Welk*
*Assistant United States Attorney*
*Chief, Asset Forfeiture Section*
*Telephone: (213) 894-6166*
*E-Mail: Steven.Welk@usdoj.gov*

*U.S. Courthouse, 14th Floor*
*312 North Spring Street*
*Los Angeles, California 90012*

February 12, 2018

**VIA U.S. MAIL AND ELECTRONIC MAIL**
James W. Spertus, Esq.
Spertus Landes & Umhofer LLP
1990 S. Bundy Drive, #705
Los Angeles, CA 90025

Terree Bowers, Esq.
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

*Re: Seizures from Pacific College*

Dear Messrs. Spertus and Bowers,

It was a pleasure speaking with both of you last week concerning the above matter, and thank you for the letter of February 7, 2018, explaining how the College has funded operations since the execution of seizure warrants on October 10, 2017. On Thursday, February 8, 2018, I engaged in a lengthy discussion of the matter with the other prosecutors involved, the FBI agents responsible for the underlying investigation, and representatives of the Department of Education knowledgeable about the case. We went over what you and I had discussed in our telephone conversation earlier in the week, and the contents of your February 7 letter. That meeting followed separate discussions concerning the matter between me and AUSA Lawrence Middleton, the Chief of the Criminal Division, and with members of the Front Office. The focus of all of those conversations was your request that the government release $1.5 million of the seized funds in return for a secured interest in real property owned by the College.

This letter is to inform you that the government has decided to decline your offer to exchange seized funds for a secured interest in real property. This decision takes into account all of the facts revealed as a result of the investigation, as well as the potential circumstances that may flow from this decision, including your claims concerning the potential closure of the College and the likely effects that such a closure would have on the students enrolled there. We believe that the better option is to urge you and your clients to use the assets available to them – including the real property in which you have offered a security interest - to continue operations without access to the seized funds. As I explained in our telephone conversation last week, when the government took its enforcement actions in October of 2017, it opted not to pursue approximately $2.8 million is cash deposits held by the College and its principals, or the real property referenced above.

James L. Spertus, Esq.
Terree Bowers, Esq.
February 12, 2018


Notwithstanding your assurances of transparency and a willingness to provide the government with an accounting of any released funds, we do not believe that a release of any portion of the funds would be in the best interests of either the students enrolled at the College or the government.  This is due in part to your admission during our telephone conversation that you could provide no assurances that, even if your request was granted, the College would not be in the same situation within a few months.

We understand that you and your clients likely will not agree with this decision.  Should you wish to pursue this matter further, I ask that you reply in writing to me and AUSA Middleton.

Regards,

NICOLA T. HANNA
United States Attorney

STEVEN R. WELK
Assistant U.S. Attorney
Chief, Asset Forfeiture Section


Cc:    AUSA Lawrence Middleton
       Chief, Criminal Division

       AUSA Daniel Ahn

# EXHIBIT 14

EXHIBIT 14

| | |
|---|---|
| **From:** | Kortum, Frank (USACAC) |
| **To:** | Elizabeth Lee |
| **Cc:** | Ahn, Daniel (USACAC) 1; Thomas Brown; Eliot F. Krieger; Bowers, Terree <Terree.Bowers@arentfox.com> (Terree.Bowers@arentfox.com); Jim Spertus |
| **Subject:** | RE: In the Matter of the Seizure of $278,028.88 et al.: Opposition to Ex Parte |
| **Date:** | Tuesday, March 13, 2018 10:50:10 AM |

Mr. Spertus,

With reference to our telephone conversation this morning, because of the nature of this case we're not prepared to stipulate to the expedited briefing schedule that we had discussed this morning.   As I explained to you, it is the government's position is  that the relief you're requesting--requiring the government to accept a lien in exchange for returning seized assets--is merits-related and is therefore not an appropriate subject for ex parte relief (and should instead be sought pursuant to a notice motion).   See generally   Mission Power Engineering Co. v. Continental Casualty Co., 883 F.Supp. 488, 492 (C.D. Cal. 1995).   Please attach a copy of this message to your ex parte application.

Frank Kortum (213.894.5710)

**From:** Elizabeth Lee [mailto:elizabeth@spertuslaw.com]
**Sent:** Monday, March 12, 2018 4:50 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Ahn, Daniel (USACAC) 1 <dahn1@usa.doj.gov>; Thomas Brown <tbrown@brownwhitelaw.com>; Eliot F. Krieger <ekrieger@sktlawyers.com>; Bowers, Terree <Terree.Bowers@arentfox.com> (Terree.Bowers@arentfox.com) <Terree.Bowers@arentfox.com>; Jim Spertus <jim@spertuslaw.com>
**Subject:** RE: In the Matter of the Seizure of $278,028.88 et al.: Opposition to Ex Parte

Thanks for sending this Frank.

Tomorrow we intend to file an ex parte application to substitute a lien for the seized assets.  Given our conversation on Friday, I assume you oppose, but please let me know the government's position.

Thanks,

Liz

**ELIZABETH J. LEE**
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | elizabeth@spertuslaw.com


**From:** Kortum, Frank (USACAC) [mailto:Frank.Kortum@usdoj.gov]

**Sent:** Monday, March 12, 2018 3:42 PM
**To:** Elizabeth Lee <elizabeth@spertuslaw.com>
**Cc:** Ahn, Daniel (USACAC) 1 <Daniel.Ahn@usdoj.gov>; Thomas Brown
<tbrown@brownwhitelaw.com>; Eliot F. Krieger <ekrieger@sktlawyers.com>; Bowers, Terree
<Terree.Bowers@arentfox.com> (Terree.Bowers@arentfox.com) <Terree.Bowers@arentfox.com>;
Jim Spertus <jim@spertuslaw.com>
**Subject:** RE: In the Matter of the Seizure of $278,028.88 et al.: Opposition to Ex Parte

Ms. Lee,

I just received a copy of the Court's order of 3/8, granting the government's ex parte application in
the above referenced matter.    A courtesy copy is attached.

Frank Kortum (213.894.5710)


**From:** Elizabeth Lee [mailto:elizabeth@spertuslaw.com]
**Sent:** Monday, March 12, 2018 2:49 PM
**To:** Kortum, Frank (USACAC) <FKortum@usa.doj.gov>
**Cc:** Ahn, Daniel (USACAC) 1 <dahn1@usa.doj.gov>; Thomas Brown <tbrown@brownwhitelaw.com>;
Eliot F. Krieger <ekrieger@sktlawyers.com>; Bowers, Terree <Terree.Bowers@arentfox.com>
(Terree.Bowers@arentfox.com) <Terree.Bowers@arentfox.com>; Jim Spertus
<jim@spertuslaw.com>
**Subject:** In the Matter of the Seizure of $278,02.88 et al.: Opposition to Ex Parte

Counsel,

Attached are Claimants William and Ila Nelson's Opposition to the Government's Ex Parte
Application to Extend the Civil Forfeiture Complaint Filing Deadline, the Declaration of Elizabeth J.
Lee with exhibits, the proposed order, and Notices of Appearance for Jim and I, all of which were
filed today.

Thanks very much.

ELIZABETH J. LEE
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | elizabeth@spertuslaw.com

Eliot F. Krieger Bar No. 159647
Quan A. Vuong,     Bar No. 276873
SCHUCHERT, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER LLP
444 W, Ocean Blvd, Suite, 1700
Long Beach, California  90802
Telephone:  (562) 597-7070
Fax:          (562) 597-7772
ekrieger@sktlawyers.com
qvyong@sktlawyers.com

Attorneys for Claimants DONNA WOO,
AND WILLIAM WOO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEUZURE OF $278,028.88 IN U.S. CURRENCY; $100,828.75 IN ACCOUNT FUNDS FROM BANK OF AMERICA ACCOUNT NO. '3623; AND $370,894.69 IN ACCOUNT FUND FROM BANK OF AMERICA ACCOUNT NO. '2093. | CR MISC. NO. 18-00351-SJO<br><br>**DECLARATION OF DONNA WOO IN SUPPORT OF WILLIAM AND ILA NELSON'S EX PARTE APPLICATION FOR RELEASE OF SIZED ASSETS PURSUANT TO 18 U.S.C. § 983(f)** |

I, Donna Woo, do hereby declare:

1.     I am a partial owner of Pacific College and have personal knowledge of the following facts.  If called upon as a witness, I could and would competently testify thereto.

2.     I currently serve as the College's Vice President.  In my role as Vice President, I am responsible for overseeing the College's operations, personnel matters, and accreditations.  I regularly consult with the College's President,

SCHUCHERT, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER LLP
444 W OCEAN BLVD., SUITE 1700
LONG BEACH, CALIFORNIA 90802
T: (562) 597-7070; F: (562)597-7772

1   William Nelson, regarding the various educational programs the College offers.

2       3.    Pacific College was formed in 1993. The College operated as a

3   satellite on the campus of California State University Long Beach for nine years.

4   The College worked with CSULB on State and Federal Grants by providing

5   nursing classes to the underserved community. It is one of the few private schools

6   in California to offer a WASC accredited Associate of Science Degree program in

7   Vocational Nursing. Other programs offered at Pacific College include Bachelor of

8   Science in Nursing, Bachelor of Science in Health Care Administration, and

9   Family Nurse Practitioner. The main campus is located in Costa Mesa, with

10  satellite campuses in Los Angeles and Ontario.

11      4.    I am 65 years old and am married to William O. Woo, Jr.  My

12  husband is 69 years old. My husband and I, together with William Nelson and his

13  wife, Ila Nelson, own the property and building where Pacific College's main

14  campus is located.  The property address is at 3160 Red Hill Avenue, Costa Mesa,

15  California 92626.  The Nelsons, my husband, and I lease the property to Pacific

16  College and are responsible for maintaining the building.  To facilitate this, the

17  Nelsons, my husband and I opened a joint account at Bank of America.

18      5.    On October 6, 2017, I learned that this account, Bank of America

19  Account Number ending in 3623, has been frozen which contained $100,828.75.

20  In addition, the government froze $370,894.69 in Bank of America Account

21  ending in 2093.  Both accounts are used in the running of Pacific College.

22      6.    On October 6, 2017, I also learned that Bank of America Checking

23  Account Number ending in 7160, which my husband and I use to pay for our

24  monthly living expenses and medical care had been frozen and subsequently closed

25  by Bank of America:

26      7.    I also learned on October 6, 2017, that the following two credit cards,

27  which are held only in my name and which I regularly use to pay for my monthly

28  living expenses and medical care, as well as my husband's, had been frozen:

2

1        a.  Visa Account Number 4400 6622 1169 0628; and

2        b.  American Express Account Number 3747 201091 94895.

3        8.    Since the seizure in October, my husband and I have spent most of our

4    savings in order to keep Pacific College open. The school's faculty and staff rely

5    on the school for their livelihoods, and the students are enrolled and working hard

6    in the hope and desire to become nurses.  I have devoted my life to education and

7    have done everything I can to allow the school to continue.  As a result, I have

8    contributed approximately $1,000,000 (one million dollars) of our personal funds

9    in order to keep the school operational since the government froze the school's

10   accounts.

11       9.    Moreover, for the past two years, I have not been taking a salary from

12   the College.  Since October I have been draining my families' personal savings for

13   all our living expenses as well as expenses of Pacific College.

14   **The Resulting Personal Impact and Hardship to Me and My Husband**

15       10.    We rely on access to the funds in the above-listed bank accounts to

16   pay for our monthly living expenses, including household utilities, car insurance,

17   groceries, and the like.

18       11.    I have been diagnosed with and am currently battling breast cancer

19   with the help of my oncologist.  My husband has been diagnosed with Hepatitis B

20   and is under specialists' care for his condition.  If our accounts remain frozen, we

21   will be unable to pay for the medication, doctors' visits, medical labs and tests, and

22   treatment that enable both of us to manage our conditions.  Although we have

23   health insurance, it does not pay for all of our expenses. We are running out of

24   funds to draw on to pay for our healthcare and the extensive medical treatment we

25   each need.

26       12.    At this point, we are down to our emergency savings and retirement

27   accounts.  We do not have additional funds to contribute to the College and are

28   trying a last-ditch effort to obtain a $500,000 (five hundred thousand dollars) loan

SCHUCHERT, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER LLP
444 W OCEAN BLVD., SUITE 1700
LONG BEACH, CALIFORNIA 90802
T: (562) 597-7070; F: (562)597-7772

3

SCHUCHERT, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER LLP
444 W OCEAN BLVD., SUITE 1700
LONG BEACH, CALIFORNIA 90802
T: (562) 597-7070; F: (562) 597-7772

1   for the College by collateralizing our personal residence in order to keep the

2   College open for at most three more months.  Although we have submitted the

3   application, we are told that we are not likely to be successful in obtaining this loan

4   as I have been told that banks will not lend money to us because of the current

5   freeze on our accounts.

6       13.     Even if we are able to obtain this loan based on the one asset we have

7   left (our personal home), the school will only be able to remain open for three

8   months at most.

9       14.     On March 6, 2018, the government filed its Ex Parte Application to

10  Extend the Civil Forfeiture Complaint Filing Deadline (the "Ex Parte") requesting

11  until June 4, 2018 to file their forfeiture complaint.  On March 8, 2018,  the court

12  granted this request prior to its seeing our opposition.  In submitting this declaration, I

13  want the Court to understand that in granting the government's request, even if I get

14  this final home equity line of credit, the school that has provided nursing education for

15  underserved communities for 25 years will close, the dreams of hundreds of students

16  who are currently working for their degrees will be shattered, the employees of the

17  school will be unemployed, and the use of all my personal resources that I have used

18  to try to save the school will be for naught.  Therefore, I respectfully urge this court,

19  as requested in the papers filed by Mr. Nelson, to order the immediate release of the

20  seized assets in exchange for a lien on Pacific College's real property pursuant to 18

21  U.S.C. § 983(f)(1)-(7).

22      *I declare under penalty of perjury pursuant to the laws of the United States*

23  *that the foregoing is true and correct.*

24

25  Executed at Costa Mesa, California on March  13 , 2018.

26

27                                           *Donna Woo*

28                                           Donna Woo

                                    4

CERTIFICATE OF SERVICE

STATE OF CALIFORNIA        )
                                              )
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1990 South Bundy Dr., Suite 705, Los Angeles, CA 90025.

On the date indicated below, I served the foregoing documents described as:

**EX PARTE APPLICATION FOR RELEASE OF SEIZED ASSETS PURSUANT TO 18 U.S.C. § 983(f); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELIZABETH J. LEE; DECLARATION OF DONNA WOO;**

on the interested parties in this action by placing a true copy thereof, enclosed in sealed envelopes, addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X]    **VIA UNITED STATES MAIL:** I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Los Angeles, California.  I am readily familiar with the practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

[X]    **ELECTRONIC MAIL:** I personally transmitted to the named person(s) on the attached service list who has previously consented in writing to receive documents via electronic mail, to the e-mail address(es) shown above, on the date listed below, originating from an electronic e-mail address affiliated with Spertus, Landes & Umhofer, LLP.  A true and correct copy of the above-described document(s) was transmitted by electronic transmission through the Spertus, Landes & Umhofer, LLP mail server, which did not report any error in sending the transmission.

[X]    (FEDERAL COURT ONLY)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

*Spertus, Landes & Umhofer, LLP*
*1990 South Bundy Dr., Suite 705*
*Los Angeles, CA, 90025*
*Telephone 310-826-4700; Facsimile 310-826-4711*

- 1 -
*CERTIFICATE OF SERVICE*

1        I declare under penalty of perjury under the laws of the State of California
2   that the above is true and correct.  Executed on March 13, 2018 at Los Angeles,
    California.

3
4   _____
5                 Eboni Lewis

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

-2-
*CERTIFICATE OF SERVICE*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

| | |
|---|---|
| 1 | <u>SERVICE LIST</u> |
| 2 | Tom Brown |
| | Managing Partner |
| 3 | Brown White & Osborn LLP |
| | 300 E State St., No. 300 |
| 4 | Redlands, CA 92373 |
| 5 | tbrown@brownwhitelaw.com |
| 6 | |
| | Counsel for Marcus Tromp |
| 7 | |
| 8 | Eliot Krieger |
| | Partner |
| 9 | Schuchert, Krieger, Truong, Spagnola & Klausner, LLP |
| 10 | 444 W Ocean Blvd., No. 1700 |
| | Long Beach, CA 90802 |
| 11 | EKrieger@SKTlawyers.com |
| 12 | |
| | Counsel for Donna Woo and William Woo |
| 13 | |
| 14 | Teree Bowers |
| | Partner |
| 15 | Arent Fox LLP |
| | 555 West Fifth Street, 48th Floor |
| 16 | Los Angeles, CA 90013 |
| 17 | terree.bowers@arentfox.com |
| 18 | |
| | Counsel for Pacific College |
| 19 | |
| 20 | Nicola T. Hanna, |
| | Lawrence S. Middleton, |
| 21 | Steven R. Welk, |
| 22 | Frank D. Kortum |
| | Assistant United States Attorney |
| 23 | 1400 United States Courthouse |
| 24 | 312 North Spring Street |
| | Los Angeles, California 90012 |
| 25 | Frank.Kortum@usdoj.gov |
| 26 | |
| 27 | |
| 28 | |

*CERTIFICATE OF SERVICE*

1  Daniel H. Ahn
2  Assistant United States Attorney
   United States Attorney's Office
3  411 West 4th Street, No. 8142
   Santa Ana, California 92701
4  Daniel.ahn@usdoj.gov
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, 90025
Telephone 310-826-4700; Facsimile 310-826-4711

-4-
*CERTIFICATE OF SERVICE*