1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  FRANK D. KORTUM (Cal. Bar No. 110984)
   Assistant United States Attorney
6  Asset Forfeiture Section
        1400 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-5710
        Facsimile: (213) 894-7177
9       E-mail: Frank.Kortum@usdoj.gov

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA



11
                     UNITED STATES DISTRICT COURT
12
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
                          WESTERN DIVISION
14
15 IN THE MATTER OF THE SEIZURE OF        CR MISC. NO. 18-351
   $278,028.88 U.S. CURRENCY;
16 $100,828.75 ACCOUNT FUNDS FROM         **OPPOSITION TO EX PARTE APPLICATION**
   BANK OF AMERICA ACCOUNT                **FOR RELEASE OF ASSETS; MEMORANDUM**
   NO.'3623; AND $370,894.69              **OF POINTS AND AUTHORITIES;**
17 ACCOUNT FUNDS FROM BANK OF             **DECLARATION OF JESSIE T. MURRAY**
   AMERICA ACCOUNT NO. '2093.
18
19
20
21
22
23
24 ///
25
26
27 ///
28

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ......................................... ii

I.    INTRODUCTION ............................................ 2

II.   STATEMENT OF FACTS ...................................... 6

III.  THIS COURT SHOULD DENY MOVANTS' EX PARTE APPLICATION ........ 10

    A.    Ex Parte Applications (Including This Application)
      Are Inherently Unfair ................................. 10

    B.    The Court Should Only Analyze the Merits of Movants'
      Application in the Context of a Noticed Motion ......... 11

    C.    Movants Have Not Shown that a Genuine Crisis Exists
      that Would Justify Relief on an Ex Parte Basis ......... 14

IV.   CONCLUSION .............................................. 15

# TABLE OF AUTHORITIES

**Cases**          **PAGE**

Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.,
    No. CV 13-05504 SJO (MANx),
    2014 WL 12701121 (C.D. Cal. Oct. 30, 2014) . . . . . . . . . . . . . . . . . . 10

In re Seizure of Any And All Funds,
    25 F.Supp.3d 270 (E.D. N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . 12, 13

In re Seizure Warrants,
    593 F.Supp.2d 892 (N.D. W.Va. 2008) . . . . . . . . . . . . . . . . . . . . . . 12

International Precision Products, B.V. v. Staco Systems, Inc.,
    No. SACV 13-0831 SJO (Ex),
    2013 WL 12121547 (C.D. Cal. Dec. 18, 2013) . . . . . . . . . . . . . . . . . . 10

Liang v. Nguyen,
    No. CV 08-8211 PSG (JCx),
    2009 WL 514073 (C.D. Cal. Feb. 26, 2009) . . . . . . . . . . . . . . . . . . . 13

Mission Power Engineering Co. v. Continental Casualty Co.,
    883 F.Supp. 488 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . 10, 11

Nexus Holdings, Inc. v. Dafcan Finance, Inc.,
    531 F.Supp.2d 839 (S.D Ohio 2008) . . . . . . . . . . . . . . . . . . . . . . . 12

St. Catherine College, Inc. v. King,
    No. 16-CV-00113-GNS,
    2017 WL 1097205 (W.D. Ky. March 22, 2017) . . . . . . . . . . . . . . . . . . . 7

United States v. $8,850 in United States Currency,
    416 U.S. 555 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Bokhari,
    No. 14-30044-MGM,
    2015 WL 7303535 (D. Mass. Nov. 19, 2015) . . . . . . . . . . . . . . . . . . . 13

United States v. One Lincoln Navigator,
    328 F.3d 1011 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Real Property Located at 475 Martin Lane,
    545 F.3d 1134 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Undetermined Amount of U.S. Currency,
    376 F.3d 260 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

United States v. Various Gold, Silver and Coins,
    916 F.Supp.2d 1182 (D. Or. 2013) . . . . . . . . . . . . . . . . . . . . . . . 13

*Victor Valley Family Resource Center v. City of Hesperia*,
    No. ED CV 16-00903-AB (SPx),
    2016 WL 7496798 (C.D. Cal. Aug. 17, 2016) .................... 11

**Statutes**

18 U.S.C. § 983(f) ........................ 2, 3, 5, 9, 11, 12, 13, 14

18 U.S.C. § 983(f)(1) ....................................... 3, 4, 9

18 U.S.C. § 983(f)(2) ............................................. 3

18 U.S.C. § 983(f)(3)(A) .......................................... 3

18 U.S.C. § 983(f)(3)(B) .......................................... 3

18 U.S.C. § 983(f)(8) ............................................. 9

18 U.S.C. § 983(f)(8)(A) ................................. 3, 11, 12

**Regulations**

34 C.F.R. § 668.162 .............................................. 7

iii

## I.   INTRODUCTION

Plaintiff United States of America (the "government") hereby opposes claimants'[1] ex parte application for release of seized property pursuant to 18 U.S.C. § 983(f), an unnoticed motion that consists of nine pages of argument, ten pages of declarations, and over 65 pages of exhibits to which the government has been forced to respond in less than 48 hours.  The motion seeks relief under a statutory provision (18 U.S.C. § 983(f) (the "Forfeiture Hardship Statute")) that sets out a multi-factor test, requiring consideration of affirmative evidence that this Court, as a matter of basic fairness, should refuse to address in an ex parte setting without the benefit of meaningful argument by and evidence from the government in opposition to a properly noticed motion.

Claimants' motion is procedurally improper because they have not shown they are facing an immediate financial crisis not of their own creation that will lead to irreparable prejudice to them if the Court hears the motion according to regularly noticed motion procedures.  Even if the Court were to conclude that claimants face an immediate financial crisis, their proposed solution is unsupported by any authority and, if granted, will cause profound prejudice to the government's legitimate law enforcement efforts in connection with the ongoing criminal investigation of which the seizure of subject funds was a part.

Should the Court decide to reach the merits of the motion, it should deny it based on the plain language of the Forfeiture Hardship Statute upon which claimants rely.  The Forfeiture Hardship Statute

---

[1]   The claimants are William and Ila Nelson (the "Nelsons") and Donna and William Woo (the "Woos").

2

1  specifically excludes from its reach the release of money unless the

2  money represents "the assets of a business that has been seized,"

3  something that has not occurred here.  18 U.S.C. § 983(f)(8)(A)

4  (emphasis added).  The Forfeiture Hardship Statute does not permit a

5  claimant to substitute alternate real or personal property as a

6  substitute for property seized pursuant to a federal seizure warrant

7  issued pursuant to a finding by a Magistrate Judge that the seized

8  property is subject to forfeiture to the United States, or in the

9  course of the execution of similarly-issued federal search warrant.

10 Nor have claimants satisfied the explicit procedural requirements

11 applicable to their request for relief under §983(f).

12     The Forfeiture Hardship Statute requires a claimant to first

13 request release of the property from the appropriate official of the

14 seizing agency, setting out the basis for claimant's request.  18

15 U.S.C. § 983(f)(2).  Claimant may file a "petition" with the Court in

16 the district court in which the seizure warrant was issued only after

17 waiting "15 days from the date of a request" of the type referenced

18 above.  §983(f)(3)(A).  That "petition" is required to set forth how

19 claimant has satisfied the elements of § 983(f)(1) and "the steps the

20 claimant has taken to secure release of the property from the

21 appropriate official," § 983(f)(3)(B).  The statute includes no

22 language suggesting that relief may be sought on an ex parte basis.

23     Claimants rely instead on emotional, inflammatory rhetoric and

24 extensive factual contentions that lack any evidentiary foundation.

25 The material factual contentions relied upon by claimants consist of

26 letters drafted and signed by their lawyers.  The declaration of Ms.

27 Woo consists of nothing more than a cursory, self-serving history of

28 Pacific College and two brief paragraphs describing her (apparently

3

recent) efforts to obtain a loan secured, not by the property that claimants demand the government accept as security, but by her personal residence.  Declaration of Donna Woo ¶¶ 12 & 13 (attached to Claimants' Motion as Exh. "B").  What Ms. Woo fails to do is credibly address the elements required to be shown under § 983(f)(1).

For example, subsection (f)(1)(B) requires the claimant to demonstrate that he or she "has sufficient ties to the community to provide assurance that the property will be available at the time of trial."  Claimants cannot make this showing.  Indeed, they admit that the reason they want the seized funds released is so they can spend them.  Claimants describe a business that has a monthly overhead of approximately $400,000.  Claimants' Motion at p. 2:6.  They state that since the seizure in October of 2017, the college has "barely survived, eking by each month on contributions from Mr. Nelson and Ms. Woo, . . ." who "cannot afford to keep the College afloat any longer."  Declaration of Elizabeth Lee ¶ 11 (attached to Claimants' Motion as Exh. "B").  Based on these admissions, the school would survive--at most--two months if the claimants' motion is granted.

In return, claimants' offer to do nothing more than make the government a creditor of what claimants themselves describe as a doomed institution.  They provide no authority whatsoever suggesting that the Court has the authority to compel the government to release funds seized on the ground that they represent proceeds of fraud against the government in return for a secured interest in real property of two individuals who are leasing the offered property to the very entity accused of the underlying crimes.

///

More importantly, claimants' assertions are not only unsupported by competent, credible evidence, they are for the most part clearly untrue. Claimants state, for example, that they have possessory interests in the seized property because "the funds were seized from personal and business bank accounts." Claimants' Motion at p. 7:26-27. The caption of this matter demonstrates the falsity of this statement: the first asset listed is $278,028.88 in U.S. Currency. The government seized that currency from the premises of Pacific College during the execution of a federal search warrant. Murray Decl. ¶ 6.

Next, claimants state that Pacific College will fail "without the return of seized funds . . . ." Claimants' Motion at p. 2:23-25. But claimants' own admissions demonstrate that the funds sought are unlikely to do anything more than delay the inevitable collapse of the College. Certainly, nothing in the motion would lead one to conclude that the release of these funds is likely to lead to the infusion of the hundreds of thousands of dollars needed on a monthly basis to keep the College operating. Indeed, claimants acknowledge that their efforts to borrow money from banks have been resoundingly unsuccessful "as a result of the investigations." Claimants' Motion at p. 4:3-4. Finally, claimants argue that "there is no risk to the government." Id. at 8:7 (emphasis in original). There is no basis for this statement. Claimants have provided no evidence whatsoever for their valuation of the College Building, but they nevertheless seek to force the government to take a lien on the building. Further, forcing the government into the role of a creditor finds no support in any statute or judicial authority.

Claimants' motion does not merely fail to establish the

necessary elements required for relief under § 983(f), it implicates several of the conditions that explicitly exempt seized property from the provisions allowing release.

Claimants' motion must be denied.

## II.    STATEMENT OF FACTS

The funds at issue were seized in the course of an investigation by the Federal Bureau of Investigation ("FBI") into allegations that Pacific College operated a scheme to defraud both its students and the United States Department of Education ("DofE").  Pacific College is a for-profit nursing school located in Costa Mesa, California. William Nelson is its President, and Ila Nelson and Donna Woo are directors.  Declaration of Jessie T. Murray ¶ 3.[2]

The subject funds were seized in October of 2017, when the FBI executed search and seizure warrants at Pacific College and Bank of America, respectively.[3]  The seized assets consist of:  $278,028.88 in U.S. Currency (seized from Pacific College); $100,828.75 from Bank of America Account No. '3623 (held in the names of William Nelson, Ila Nelson, Donna Woo, and William Woo); and $370,894.69 from Bank of America Account No. '2093 (held in the name of William Nelson and Ila Nelson).  The affidavits submitted in support of the seizure warrant applications establish that the funds on deposit in the Bank of America accounts represented or were traceable to proceeds of the

---

[2]   The details of the scheme are set forth in Paragraphs 4-5 of the Murray Declaration, which the government filed on March 12, 2018, in support of its most recent application to extend the deadline for the filing of a civil forfeiture complaint against the seized funds.

[3]   Pursuant to court order, the affidavits in support of both the search warrants and the seizure warrants remain under seal. Murray Decl. ¶ 6.

1  fraud scheme.  Id. ¶ 6.

2      DofE subsequently imposed conditions on Pacific College's

3  receipt of Federal Student Aid funds ("FSA funds") by placing Pacific

4  College on what is known as Heightened Cash Monitoring 2 ("HCM2")

5  status pursuant to 34 C.F.R. § 668.162.  Murray Decl. ¶ 6.

6  "Heightened cash monitoring requires participating institution to

7  disburse FSA funds to students and seek reimbursement from the

8  [DofE], instead of the standard funding protocol under which the

9  [DofE] provides the funds directly to the students."  St. Catherine

10  College, Inc. v. King, No. 16-CV-00113-GNS, 2017 WL 1097205 at *1

11  (W.D. Ky. March 22, 2017).

12      Based on their motion, claimants responded to the seizure of the

13  funds (and Pacific College's placement on HCM2 status) by tapping

14  into their personal savings to keep the College open, while hoping,

15  against all evidence, that the government's investigation would

16  simply go away and the DofE would discontinue the HCM2 status.

17  Neither had happened by mid-January of 2018, at which point counsel

18  for Pacific College contacted government counsel, asking that the

19  government agree to release $1.5 million in seized funds in exchange

20  for a lien in the same amount against a building that the college

21  leases from the Nelsons and the Woos (the "College Building").

22  Claimants' Motion Exh. 10.  On or about February 5, 2018, government

23  counsel discussed the lien proposal telephonically with claimants'

24  counsel.  During the telephone conference, claimants' counsel

25  essentially admitted that even if the government agreed to the lien

26  proposal and released the seized funds, Pacific College would

27  probably be facing the same financial crisis within a few months--at

28  which time the College likely would request that the government

7

1  release the lien (an outcome that would in effect leave the

2  government with no seized assets).  See Claimants' Motion Exh. 13.

3  On February 12, 2018, government counsel notified counsel for

4  claimants in writing that the government had decided to decline the

5  lien proposal.  See id.  The government has consistently maintained

6  this position on the lien proposal since that time.

7      On March 5, 2018, the government filed an ex parte application

8  to further extend the deadline for filing a civil forfeiture

9  complaint against the seized funds.[4]   The government's application

10  described the status of the government's investigation,[5] and

11  explained why requiring the government to file a civil forfeiture

12  complaint would prematurely disclose the scope of the government's

13  investigation.[6]  On March 8, 2018, the Court granted the government's

14  application.

15      On March 13, 2018, more than a month after the government's

16  rejection of the lien proposal, claimants filed the instant ex parte

17  application, seeking to force imposition of the lien proposal already

18

19      [4]   The government's ex parte application was procedurally
20  appropriate.  "[C]ourts have the authority to grant ex parte
   applications for time extensions under [the Civil Asset Forfeiture
21  Reform Act]."  United States v. Real Property Located at 475 Martin
   Lane, 545 F.3d 1134, 1144 (9th Cir. 2008).  An application to extend
22  a filing deadline seeks routine procedural relief and is therefore
   appropriate for an ex parte application.  By contrast, as explained
23  below, resolution of the issues presented in claimants' ex parte
   application will require  analysis that is best accomplished in the
24  context of a noticed motion.

25      [5]   See Murray Decl. ¶ 7.
26
27      [6]   See Murray Decl. ¶ 8.  The government's application included
   a statement, requested by counsel for the Nelsons, that they wished
28  to oppose the government's application within the next seven days.

1  rejected by the government, and relying upon the Forfeiture Hardship

2  Statute (18 U.S.C. § 983(f)).[7]  Motion at p. i-ii.

3       In addition to providing no explanation for their month-long

4  delay in seeking relief, claimants offer insufficient evidence of

5  circumstances that justify the resolution of their hardship claim on

6  an ex parte basis.  The only declaration from a percipient witness is

7  from Donna Woo.  There are neither declarations from the other

8  claimants, nor any evidence of income, expenses, assets and

9  liabilities from the other claimants, or the College.  Ms. Woo

10 acknowledges that she has substantial equity in her home, and claims

11 that she has applied for a home equity loan, but she presents no

12 evidence of any attempt to obtain a loan secured by the College

_____

14      [7]  In order to obtain the release of seized property under §
   983(f), a claimant must establish all of the following five

15 requirements:

16           (A) the claimant has a possessory interest in the property;

17           (B) the claimant has sufficient ties to the community to
         provide assurance that the property will be available at the
         time of the trial;

18
             (C) the continued possession by the Government pending the

19       final disposition of forfeiture proceedings will cause
         substantial hardship to the claimant, such as preventing the

20       functioning of a business, preventing an individual from
         working, or leaving an individual homeless;

21           (D) the claimant's likely hardship from the continued
         possession by the Government of the seized property outweighs

22       the risk that the property will be destroyed, damaged, lost,
         concealed, or transferred if it is returned to the claimant

23       during the pendency of the proceedings; and

             (E) none of the conditions set forth in [18 U.S.C. §

24       983(f)(8)] applies.

25 18 U.S.C. § 983(f)(1)).  Among the categories of property explicitly
   excluded from release under § 983(f)(8) are "currency, or other

26 monetary instrument, or electronic funds unless such currency or
   other monetary instrument or electronic funds constitutes the assets

27 of a legitimate business which has been seized."  Id.

28

1  Building (of which she is also an owner), which she claims has
2  existing equity of over $700,000.  Finally, claimants fail to explain
3  how the relief they seek will address in any meaningful way the
4  government's legitimate concerns that a few months from now the funds
5  will be dissipated and Pacific College will still be in an untenable
6  financial situation.  See Claimants' Motion Exh. 13.

7  **III.  ARGUMENT**

8      A.   Ex Parte Applications (Including This Application) are
            Inherently Unfair.
9

10      Applications for ex parte relief are "inherently unfair" because
11  the procedure "grossly" restricts the opportunity to prepare an
12  opposition.  See, e.g., Mission Power Engineering Co. v. Continental
13  Casualty Co., 883 F.Supp. 488, 490 (C.D. Cal. 1995).[8]  In order to
14  obtain ex parte relief, the moving party must first show that it will
15  be "irreparably prejudiced if the underlying motion is heard
16  according to regular noticed motion procedures."  Id. at 492.
17  Second, the moving party must show that it is "without fault in
18  creating the crisis that requires ex parte relief . . . ."  Id.

19

20      [8]  This Court's civil standing order "clearly states that ex
21  parte applications are discouraged."  International Precision
    Products, B.V. v. Staco Systems, Inc., No. SACV 13-0831 SJO (Ex),
22  2013 WL 12121547 at *1 (C.D. Cal. Dec. 18, 2013) (citing Standing
    Order ¶ 21).  Ex parte applications "tend to deprive the Court of the
23  best possible presentation of the merits and create concerns about
    unfairness to the opposing party."  Gemcap Lending I, LLC v. Crop USA
24  Ins. Agency, Inc., No. CV 13-05504 SJO (MANx), 2014 WL 12701121 at *2
    (C.D. Cal. Oct. 30, 2014) (citation and internal quotes omitted).  Ex
25  parte applications are also prejudicial to other parties before the
    Court, because they allow the applicant to "go to the head of the
26  line in front of all other litigants and receive special treatment."
27  International Precision Products, supra, 2013 WL 12121547 at *1
    (citation omitted).

28

1    Claimants' _ex parte_ application here dramatically illustrates
2    the inherent unfairness of the _ex parte_ application process in the
3    context of a fact-dependent, multi-factor analysis.   The application
4    consists of a nine-page memorandum, ten pages of declarations (one of
5    which is from counsel), and over 65 pages of exhibits consisting
6    primarily of statements by counsel, to which the government has had
7    to respond on an expedited basis.   Simply put, movants have "afforded
8    themselves ample time to prepare their [a]pplication" while forcing
9    a "hasty response" from the government.   See generally _Victor Valley_
10   _Family Resource Center v. City of Hesperia_, No. ED CV 16-00903-AB
11   (SPx), 2016 WL 7496798 at *2 (C.D. Cal. Aug. 17, 2016).   On that
12   basis alone, the Court should deny the _ex parte_ application.

13          B.   The Court Should Only Analyze the Merits of Claimants'
                 Application in the Context of a Noticed Motion.
14

15          As discussed above, claimants' application seeks relief under
16   the Forfeiture Hardship Statute (18 U.S.C. § 983(f)), which sets
17   forth highly specific and detailed elements that the Court should not
18   undertake to analyze without the benefit of full briefing and a
19   meaningful adversarial hearing.   Careful analysis is especially
20   necessary here because, while the government has had only a limited
21   opportunity to review the evidence and argument claimants have
22   presented in their motion, there are certain clear deficiencies in
23   the Claimants' Motion that render it meritless.

24          The most obvious bar to relief is Section 983(f)(8)(A)'s
25   prohibition of the release of "currency and monetary instruments"
26   that are not the assets of a business that has been seized.
27   Claimants assert that Section 983(f)(8)(A)'s prohibition does not
28   apply to assets which have been seized from a business (as opposed to

                                    11

seizure of the business itself).  Claimants' Motion at p. 8-9.  In support of this assertion claimants rely on Nexus Holdings, Inc. v. Dafcan Finance, Inc., 531 F.Supp.2d 839 (S.D Ohio 2008), where the court adopted a strained construction of Section 983(f)(8)(A) to order the return of assets of an unseized business.  Claimants' Motion at p. 9:4.  Nexus Holdings has been discredited because it failed to discuss the "proper construction" of Section 981(f)(8)(A).  See In re Seizure Warrants, 593 F.Supp.2d 892, 893 (N.D. W.Va. 2008).  The better-reasoned decisions deny hardship petitions under Section 983(f) where the government does not seize the business itself, regardless of whether other elements of the statute have satisfied.  See, e.g., In re Seizure of Any And All Funds, 25 F.Supp.3d 270, 276, 278 (E.D. N.Y. 2014)(listing cases).  Claimants do not contend that the government seized Pacific College (it did not); nor do they assert that the assets sought to be released are assets of the College.  The exclusion of Section 983(f)(8)(A) clearly applies here.

Second, claimants have failed to address authority holding that a court may not authorize other property (including real property) as a substitute for property released pursuant to Section 983(f).  See, e.g., United States v. Undetermined Amount of U.S. Currency, 376 F.3d 260, 266 (4th Cir. 2004) (holding that district court "err[ed] in allowing other forfeitable property to substitute for released account funds.").

Third, claimants have admitted that they intend to spend any returned funds to keep the College operating.  They fail to mention, however, that any returned funds would only keep the College operating for a few more months.  See Claimants Motion Exh. 13. Courts will deny relief under the Forfeiture Hardship Statute "where

dissipation [of returned assets] is nearly certain . . . ." <u>United States v. Various Gold, Silver and Coins</u>, 916 F.Supp.2d 1182, 1186 (D. Or. 2013).

Finally, claimants devote considerable attention to an argument that the seizures were unconstitutional.  Claimants' Application at p. 5-6.  While this extraneous assertion is patently without merit (<u>see, e.g.</u>, <u>United States v. $8,850 in United States Currency</u>, 416 U.S. 555, 569 (1983) (seizure of currency for forfeiture does not violate due process)), the inclusion of a purported constitutional issue in the motion illustrates why the <u>ex parte</u> procedure invoked here is inappropriate.  <u>See, generally</u>, <u>Liang v. Nguyen</u>, No. CV 08-8211 PSG (JCx), 2009 WL 514073 at *3 (C.D. Cal. Feb. 26, 2009) (denying <u>ex parte</u> relief where application raised a "variety" of issues).

The reported decisions reflect judicial recognition that applications for relief under the Hardship Forfeiture Statute should receive a meaningful adversarial hearing.   <u>See, e.g.</u>, <u>United States v. One Lincoln Navigator</u>, 328 F.3d 1011, 1012 (8th Cir. 2003) (reporting that district court had conducted evidentiary hearing on movants' application for release of property under 18 U.S.C. § 983(f)); <u>accord</u> <u>In re Seizure of Any and All Funds</u>, <u>supra</u>, 25 F.Supp.3d at 277;[9] <u>see also</u> <u>United States v. Bokhari</u>, No. 14-30044-MGM, 2015 WL 7303535 at *6 (D. Mass. Nov. 19, 2015) (request for release of seized funds to hire counsel required "meaningful adversarial hearing").

---

[9]   The detailed analysis set forth in <u>In re Seizure of Any And All Funds</u> took place after an evidentiary hearing.  25 F.Supp.3d at 272.

1       C.    <u>Claimants Have Not Shown that a Genuine Crisis Exists that</u>

2           <u>Would Justify Relief on an Ex Parte Basis.</u>

3     As discussed above, the only arguably competent evidence of

4 claimants' financial hardship is set out in Donna Woo's declaration,

5 which states that "we are down to our emergency savings and

6 retirement accounts." Woo Decl. ¶ 12. However, claimants do not

7 seek relief for the claimants, but rather for their business, which

8 is the target of an ongoing criminal investigation. The lack of

9 detailed declarations and supporting evidence makes in impossible,

10 particularly in the context of an <u>ex parte</u> application, to determine

11 any of the issues implicated by the motion.[10] The Court, if it does

12 not deny the application outright, should require claimants to file

13 their application as a noticed motion and to submit detailed

14 financial statements (as well as evidence of any attempts they have

15 made to obtain a loan on the College Building) before considering

16 whether they are entitled to relief under Section 983(f).

17 Furthermore, as discussed above, the Court should not require the

18 government to fully address the merits of the motion at this time.

19 ///

---

25    [10] To the extent the Court considers the merits of movant's <u>ex parte</u> application, the government would argue that the evidence they have presented is insufficient to justify release of any seized assets. <u>See, e.g.</u>, <u>United States v. Undetermined Amount of U.S. Currency</u>, 376 F.3d 260, 267, 269 (4th Cir. 2004) (reversing release of funds under 18 U.S.C. § 983(f) where movants failed to present "sufficient evidence" of hardship).

IV.   CONCLUSION

     For the foregoing reasons, the government respectfully requests that this Court deny claimants' _ex parte_ application for release of seized assets.

Dated: March 16, 2018                    Respectfully submitted,

                                         NICOLA T. HANNA
                                         United States Attorney
                                         LAWRENCE S. MIDDLETON
                                         Assistant United States Attorney
                                         Chief, Criminal Division
                                         STEVEN R. WELK
                                         Assistant United States Attorney
                                         Chief, Asset Forfeiture Section


                                         FRANK D. KORTUM
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

## DECLARATION OF JESSIE T. MURRAY

I, Jessie T. Murray, being duly sworn, hereby say the following is true based upon my personal knowledge and belief:

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 1995. Presently I am assigned full time to investigation in forfeiture related matters.

2.    I am familiar with the facts and circumstances described herein, and this declaration is based upon the personal knowledge I have derived from conversations and review of reports and what I believe to be reliable information obtained from a variety of sources.   The information contained in this declaration is based upon my personal knowledge and observations, conversations with other law enforcement officers, report of conversations with victims and a review of documents.   The conclusions I have reached are based upon my training and experience, my conversations with other federal and state law enforcement investigators with whom I have discussed this case specifically and the principles related to the investigation of financial crimes in general.   This declaration does not purport to set forth my complete knowledge or understanding of the facts related to this investigation.   Unless specifically indicated otherwise, all conversations and statements described in this declaration are related in substance and in part only.

3.    The FBI is investigating allegations that Pacific College operated a scheme to defraud both its students and the United States Department of Education ("DofE").   Pacific College is a for-profit nursing school located in Costa Mesa, California.   William Nelson is the President of Pacific College.   Ila Nelson and Donna Woo are

1   directors of Pacific College.

2       4.   This scheme is alleged to have begun in approximately 2012,

3   and involved, among other things, inflated grades, falsified

4   attendance records, and the issuance of passing grades to failing

5   students.  As part of the scheme, Pacific College is alleged to have

6   falsely represented to DofE that the school's students were making

7   satisfactory academic progress and that the school was therefore

8   eligible to receive Federal Student Aid funds ("FSA funds") from

9   DofE.  Had DofE known the true facts, it would not have released the

10  FSA funds to Pacific College.

11      5.   Pacific College is also alleged to have fraudulently

12  withheld FSA funds from students during this same time period.  It

13  accomplished this scheme by creating false records that reflected

14  tuition rates above what the student was actually paying.  It

15  accomplished this scheme by creating false records that reflected

16  tuition rates above what the student was actually paying.  Pacific

17  College then submitted these false records to DofE in order to obtain

18  FSA funds that it should have credited to the student based on the

19  tuition actually paid, and then reimbursed the students for tuition

20  at an artificially low rate.

21      6.   In October of 2017, the FBI executed search and seizure

22  warrants at Pacific College and seized the following assets:

23  (A) $278,028.88 in U.S. Currency;  (B) $100,828.75 in Account Funds

24  from Bank of America Account No. '3623; and (C) $370,894.69 in

25  Account Funds from Bank of America Account No. '2093.  Pursuant to the

26  Court's order, the affidavits in support of the search and the

27  seizure warrants remain under seal.  The seizure warrant affidavits

28  set forth evidence establishing that the Nelsons and the Woos

1    received proceeds of the fraud scheme.   DofE subsequently imposed

2    conditions on Pacific College's receipt of FSA funds by placing

3    Pacific College on what is known as Heightened Cash Monitoring 2

4    ("HCM2") status pursuant to 34 C.F.R. § 668.162.

5         7.   FBI agents and DofE investigators continue to evaluate the

6    extent of Pacific College's fraudulent conduct.   In any given year,

7    over 300 students are enrolled in Pacific College, so the

8    investigators must review a large number of student records and other

9    documents in order to ascertain the scope of a fraud scheme that was

10   ongoing for at least five years.   Many of the student records contain

11   sensitive information about academic performance and financial

12   status.   Thus far, the investigators have received and are analyzing

13   over 2.7 terabytes of evidentiary data (i.e., the equivalent of over

14   one billion pages) in connection with the investigation.   The

15   investigators are diligently reviewing this information, but the

16   investigation is at a relatively early stage and the investigators

17   will need at least 90 more days to complete it.

18        8.   A civil forfeiture complaint that sets forth detailed facts

19   will likely cause premature disclosure of the scope and direction

20   ///

21

22   ///

23

24   ///

25

26

27

28

1  of the government's pending criminal investigation and would nullify

2  the court-ordered sealing of the search warrant and seizure warrant

3  affidavits.

4      I declare under penalty of perjury under the laws of the United

5  States that the foregoing is true and correct to the best of my

6  knowledge.

7      Executed this 5th day of March, 2018 in Santa Ana, California.

8

9

10  Jessie T. Murray

11  Special Agent

    Federal Bureau of Investigation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

**CERTIFICATE OF SERVICE**

I, Ann M. Eberhardy, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, 14th Floor, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on **March 16, 2018**, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of: **OPPOSITION TO *EX PARTE* APPLICATION FOR RELEASE OF ASSETS; MEMORANDUM OF POINTS AND AUTHORITIES** and that service was:

| | | | |
|---|---|---|---|
| ☐ | Placed in a closed envelope for collection and inter-office delivery, addressed as follows: | ☒ | Placed in a sealed envelope for collection and mailing via USPS, addressed as follows: |
| ☐ | By hand delivery, addressed as follows: | ☐ | By facsimile, as follows: |
| ☐ | By messenger, as follows: | ☒ | Sent by E-Mail, as follows: |

James W. Spertus, Esq.
Spertus Landes & Umhofer, LLP
1990 South Bundy Drive, STE 705
Los Angeles, California
jim@spertuslaw.com

Eliot F. Krieger, Esq.
Schuchert Krieger Truong Spagnola & Klausner, LLP
444 West Ocean Blvd., STE 1700
Long Beach, California 90802
EKrieger@SKTlawyers.com

at their last known addresses..

This Certificate is executed on **March 16, 2018**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

Ann M. Eberhardy
Senior Paralegal